Elliott J. Gray, Jr. was indicted and convicted for the murder of Cora Thomas in violation of Alabama Code 1975, §13A-6-2. Sentence was life imprisonment. Three issues are raised on appeal.
 I
The trial judge properly refused to instruct the jury on manslaughter as a lesser included offense of murder because there was no rational basis for a conviction for manslaughter.
When the crime charged involves a specific intent, such as murder, and there is evidence of intoxication, the trial judge should instruct the jury on the lesser included offense of manslaughter. Chatham v. State, 92 Ala. 47, 9 So. 607 (1891). Here, there is absolutely no evidence of intoxication. In fact, all the evidence shows that Gray was sober when he killed Mrs. Thomas. "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Alabama Code 1975, § 13A-1-9 (b).
There was some testimony tending to show that Gray was insane and not legally responsible for his actions. Where the accused is either guilty of murder or is not guilty by reason of insanity, the trial court is under no duty to charge the jury on the law of manslaughter. Braham v. State, 143 Ala. 28, 47,38 So. 919, 926 (1905). It is no error to refuse to charge on manslaughter where the evidence clearly shows that the accused, if sane, is guilty of murder. Ragland v. State, 125 Ala. 12,30, 27 So. 983, 988 (1900). See also Sheppard v. State,243 Ala. 498, 501, 10 So.2d 822, 824 (1942).
Gray argues he was entitled to an instruction on the "reckless provision of manslaughter." However, there is simply no evidence that he was aware of and consciously disregarded a substantial and unjustifiable risk as those terms are employed in the definition of "reckless" provided in Alabama Code 1975, § 13A-2-2 (3). All the evidence shows that Gray walked off his front porch, drew his pistol and shot Mrs. Thomas in the neck. Immediately after the crime, Gray volunteered to the police that he shot Mrs. Thomas and later admitted it again in a tape-recorded statement. Defense witnesses testified that Gray was crazy and did not know what he was doing when he shot Mrs. Thomas.
The undisputed evidence shows that Gray deliberately shot Mrs. Thomas. There was nothing inadvertent or careless in his actions. There is absolutely no evidence that Gray was handling the weapon in a reckless or careless manner. Under all the evidence, Gray deliberately shot Mrs. Thomas. Under the State's evidence, he did it intentionally and wilfully. Gray's defense was that he did not know what he was doing and did not appreciate the consequences of his actions because of his limited mental state.
Evidence of an abnormal mental condition may be sufficient to show that the accused could not have formed or maintained the required intent. Annot., 22 A.L.R.3d 1228 (1968). In this case, if Gray did not have the intent to kill Mrs. Thomas because of his insanity, then he was due to be found not guilty by reason of insanity.
In Alabama, manslaughter consists of either a reckless killing, § 13A-6-3 (a)(1), or an intentional killing committed in the heat of passion due to a legal provocation, § 13A-6-3
(a)(2). An extreme emotional or mental disturbance does not reduce murder to manslaughter.
 "Under § 13A-6-3 (a)(2), it was originally proposed to replace the `heat of passion' due to provocation criterion with `extreme mental or emotional disturbance,' if reasonable, and not the result of defendant's own intentional, knowing, reckless or criminally negligent act, which approach is being adopted by many modern criminal codes. [Citations omitted.] This standard originated in the Model Penal Code § 210.3 and is discussed in Commentary, (Tent. Draft No. 9) pp. 28-29. *Page 1320 
 "However, some members of the Advisory Committee considered the proposal unsound, unclear and susceptible of abuse, so it was not adopted, and § 13A-6-3 (a)(2) retains the `heat of passion' under legal provocation defense." Commentary to § 13A-6-3.
Gray argues the doctrine of diminished responsibility to preclude his liability for murder. This topic is well covered at II Model Penal Code And Commentaries, Part II, § 210.3, pp. 67-73 (1980). While diminished responsibility has been "widely adopted" as a basis for reducing first degree murder to second degree murder, "[r]educing murder to manslaughter is another matter. Very few jurisdictions allow mental disease or defect to reduce intentional homicide to manslaughter." Model Penal Code at p. 70.
 "Traditionally, such mitigation arises only from the rule of provocation. As the earlier discussion makes clear, provocation has been a predominantly objective determination. It focuses on circumstances that would so move an ordinary person to kill that the defendant's act of succumbing to that temptation, although culpable, does not warrant conviction for murder. It seeks to identify cases of intentional homicide where the situation is as much to blame as the actor. Recognizing diminished responsibility as an alternative ground for reducing murder to manslaughter undermines this scheme. Unlike provocation, diminished responsibility is entirely subjective in character. It looks into the actor's mind to see whether he should be judged by a lesser standard than that applicable to ordinary men. It recognizes the defendant's own mental disorder or emotional instability as a basis for partially excusing his conduct. This position undoubtedly achieves a closer relation between criminal liability and moral guilt. Moral condemnation must be founded, at least in part, on some perception of the capacities and limitations of the individual actor. To the extent that the abnormal individual is judged as if he were normal, to the extent that the drunk man is judged as if he were sober, to the extent, in short, that the defective person is judged as if he were someone else, the moral judgment underlying criminal conviction is undermined. The doctrine of diminished responsibility resolves this conflict in favor of an individualistic and subjective determination of criminal liability. But this approach has its costs. By evaluating the abnormal individual on his own terms, it decreases the incentives for him to behave as if he were normal. It blurs the law's message that there are certain minimal standards of conduct to which every member of society must conform. By restricting the extreme condemnation of liability for murder to cases where it is fully warranted in a relativistic sense, diminished responsibility undercuts the social purpose of condemnation. And the factors that call for mitigation under this doctrine are the very aspects of an individual's personality that make us most fearful of his future conduct. In short, diminished responsibility brings formal guilt more closely into line with moral blameworthiness, but only at the cost of driving a wedge between dangerousness and social control." Model Penal Code pp. 70-72.
For all these reasons, we find that the trial judge properly refused to charge the jury on manslaughter.
 II
After the judge had instructed the jury, but before they began their deliberations, a juror asked what would happen if the jury found the accused not guilty by reason of insanity. The judge responded:
 "THE COURT: I cannot remark about that. In some states you can tell the jury the likely consequences of such a verdict. In Alabama, you cannot. Whether that is the wisest piece of legislation, I don't know. But, that is the way it is.
 "I would ask you not to speculate about that; in the same vein that I ask you in an oblique way, really, not to consider *Page 1321 
the possible consequences of any verdict. Because, punishment is not in the jury's hands, if there was an adjudication of guilt. That is in our hands, my hands."
A judge should not leave the jury with "the impression that the defendant would be left to go free and unfettered if the jury determined him not guilty by reason of insanity." Hanes v.State, 56 Ala. App. 467, 469, 323 So.2d 118, 119 (1975). In this case, the judge's comment does not have such an "unfair and chilling impact." Id.
Alabama Code 1975, § 15-16-41, provides that if a jury finds a defendant not guilty by reason of insanity, the trial judge shall determine whether there exists probable cause to believe that the defendant is mentally ill and poses a real and present threat of substantial harm to himself or to others. If such probable cause is found to exist, a hearing must be held to determine whether the defendant shall be involuntarily committed. If no probable cause is found, the defendant shall be released from custody.
However, this issue is not within a jury's sphere of concern.
 "Clearly the sole question in this connection was whether [the] defendant was `not guilty by reason of insanity.'
 "What might happen if he were sent to the insane asylum, instead of the penitentiary, should not have been thrown into the case to influence the verdict." Boyle v. State, 229 Ala. 212, 225, 154 So. 575, 587
(1934).
Under Alabama's new Criminal Code, the trial court, and not the jury, determines the punishment. § 13A-5-1.
In this case, the instructions of the trial judge were not error.
 III
Gray contends that the State failed to prove by a preponderance of the evidence that he knowingly, intelligently, and voluntarily waived his Miranda rights prior to making his statement. At trial, the main issue appeared to center around Gray's state of mind as affecting the voluntariness and admissibility of his statement.
Birmingham Police Investigator Benjamin F. Clanton testified that Gray waived his constitutional rights and "appeared to understand what he was doing." The officer noticed nothing unusual about Gray or his behavior.
Gray admitted being informed of his rights and signing the waiver form. He testified that he was taking medication for hypertension, seizures, and eye problems. Although Gray testified that he did not understand his rights, he insisted that he told the officer the truth: "I didn't quite understand much about the lawyer, but I would have told the same thing if I had a lawyer, I would still had to say the same thing, because I was going to tell the truth anyway whether I had one or not."
The trial judge noted "with great interest the clarity" with which Gray responded to the lawyers' questions at the hearing on the voluntariness of his confession. In denying the motion to suppress, the trial judge noted for the record:
 "I guess the record could reflect these things: The court having observed the defendant testify, it would be my observation that physically he appeared to be collected, his demeanor was appropriate, his responses. He appeared to have no problem understanding the lawyers. He answered the questions with a directness and attentiveness, that I noticed. His inflections and expressions were appropriate under the circumstances."
"When the trial judge has determined the voluntariness of the alleged confession, such holding is entitled to great weight on appeal and will not be disturbed unless it appears to be contrary to the great weight of evidence and manifestly wrong."Harris v. State, 280 Ala. 468, 470-71, 195 So.2d 521, 523
(1967). "When confessions are admitted on controverted questions of fact, this court will not revise the rulings of the lower court, admitting them, unless they appear to be manifestly wrong." Phillips v. State, 248 Ala. 510, 520,28 So.2d 542, 550 (1946). Applying those standards for *Page 1322 
appellate review of a trial judge's determination of the admissibility of a confession that we enumerated in Williams v.State, 461 So.2d 834, 838 (Ala.Cr.App. 1983)[1], reversed on other grounds, 461 So.2d 852 (Ala. 1984), we find no error in the admission of Gray's confession. See Shorts v. State,412 So.2d 830 (Ala.Cr.App. 1981).
Review convinces this Court that Gray received a fair trial and that his conviction is due to be affirmed.
AFFIRMED.
All Judges concur.
[1] "The standards for appellate review of a trial judge's determination of the admissibility of a confession are as follows: (1) The test for voluntariness involves a consideration of the totality of the circumstances. Haynes v.Washington, 373 U.S. 503, 513-14, 83 S.Ct. 1336, 1342-43,10 L.Ed.2d 513 (1963). (2) `The admissibility of confessions is for the court, their credibility is for the jury.' Phillips v.State, 248 Ala. 510, 520, 28 So.2d 542 (1946). (3) Where the voluntariness inquiry presents conflicting evidence and the trial judge finds that the confession was voluntarily made, great weight must be given his judgment. `(W)here there is a genuine conflict of evidence great reliance must be placed upon the finder of fact.' Blackburn v. Alabama, 361 U.S. 199, 208,80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960). (4) This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the great weight of the evidence and manifestly wrong. Harris v. State,280 Ala. 468, 470-71, 195 So.2d 521 (1967). (5) Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial court need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371,1375 (Ala.Cr.App.), cert. denied, 347 So.2d 1377 (Ala. 1977) and cases cited therein. `Review of the court's action is limited to determining whether its finding was clearly erroneous.' United States v. Greer, 566 F.2d 472, 473 (5th Cir. 1978)."