[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1029 
 AFTER REMAND FROM THE SUPREME COURT OF ALABAMA
The appellant, Harvey Lee Windsor, was convicted of the murder of Rayford W. Howard, made capital because the murder was committed during the course of a robbery in the first degree. § 13A-5-40(a)(2), Code of Alabama 1975. The jury unanimously recommended that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
This court, in Windsor v. State, 683 So.2d 1013 (Ala.Cr.App. 1993), reversed the appellant's conviction, holding that employees of the circuit clerk's office had impermissibly excused prospective jurors from the venire and that the prosecution had impermissibly commented on the appellant's failure to testify. The Supreme Court of Alabama in Windsor v.State, 683 So.2d 1021 (Ala. 1994), reversed our judgment on those two issues and remanded the case to this court. In this opinion, we will address the remaining issues presented by the appellant. *Page 1030 
The evidence presented by the state tended to show that on February 25, 1988, Rayford W. Howard in St. Clair County and Randal Earl Pepper in Colbert County were robbed and murdered. The appellant and Lavon Guthrie[1] were charged with the offenses. This appeal concerns only the robbery and murder of Rayford W. Howard.
On February 25, at approximately 2:00 p.m., Rayford Howard was found dead in his store in St. Clair County. He died as a result of a shotgun blast to the chest. Money had been taken from the store's cash register and the victim's pants pockets had been emptied. A witness saw someone carrying a "sawed-off shotgun" leave the victim's store, open the breech and reload the gun, and get into a black sports car.
On this same day, the appellant and Guthrie were seen in St. Clair County travelling together in a black Ford Mustang automobile with gold stripes and the word "boss" written in gold on the sides. At approximately 1:00 p.m. that day, the appellant and Guthrie had visited Sammie Sue Wilson Osborn at her house. Ms. Osborn's house was located approximately five miles from Rayford Howard's store.
The automobile in which the appellant was riding was seen later that afternoon travelling at a high rate speed in Marshall County and in Lawrence County. The automobile was also seen at Tommy's Store, a convenience store, in Lawrence County. An occupant of the car discarded two Budweiser beer cans in the parking lot of Tommy's Store.
The automobile was also seen at approximately 8:00 p.m. at a store in Colbert County. The attendant at the Colbert County store, Randal Earl Pepper, was killed by a shotgun blast to the head. The appellant was identified as the person running from the store and getting into the automobile. When the appellant was arrested, he had in his possession a .25 automatic pistol that had belonged to Mr. Pepper.
The automobile in which the appellant and Guthrie were travelling had been stolen on February 23, 1988, from Connie's Quick Stop convenience store in Tiftonia, Tennessee. The automobile was recovered on February 26, at Tiftonia Baptist Church, two-tenths of a mile from Connie's Quick Stop. Guthrie's sister's house was located between Connie's Quick Stop and the Tiftonia Baptist Church.
When the automobile was searched, the following items were recovered: a ring of keys, a receipt from Parisian department store, a .20 gauge shotgun shell, and cigarette butts. One of the keys on the recovered ring opened a padlock that secured the rear door of Howard's Store. The Parisian receipt was for a suit that Mr. Howard had purchased for his wife. The .20 gauge shotgun shell had been fired from the same gun as a shell that was recovered outside Howard's store. The appellant's fingerprint was found on one of the cigarette butts.
Additionally, Guthrie's fingerprints were found on Mr. Howard's driver's license, which was recovered, along with his wallet and its contents, beside the road a few miles from his store. Guthrie's fingerprints were also found on one of the Budweiser beer cans that was left at Tommy's Store in Lawrence County.
Many of the issues that the appellant presents on appeal were not brought to the attention of the trial court. Because this case involves the death penalty, however, this court is obliged, under Rule 45A, Ala.R.App.P., to search the record for plain error.
 "In all cases in which the death penalty has been imposed, the court of criminal appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Rule 45A, Ala.R.App.P.
"The plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' "United States v. Young, 470 U.S. 1, *Page 1031 
15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985), quotingUnited States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584,1592, 71 L.Ed.2d 816 (1982).
 PRE-TRIAL ISSUES I
The appellant contends that his arrest was illegal and that, therefore, items confiscated from him during a search incident to his arrest should not have been received into evidence.
Alabama law enforcement officials sent bulletins to law enforcement agencies in other states notifying them that the appellant and Guthrie were wanted in connection with a robbery-murder in Alabama. The bulletins described the suspects as two white males, one of whom was seen wearing a black cap. They were driving a brown 1970's model Plymouth Volare automobile. They were considered armed and dangerous.
While on patrol, Officer Ken Cox of the Hamilton County, Tennessee, Sheriff's Department, noticed an automobile at an interstate highway rest area that matched the car described in the bulletin. The automobile had been backed into a parking space and the front wheels were turned sharply toward the entrance ramp to the highway. Officer Cox looked in the window of the automobile and saw two white males asleep inside. One was wearing a black cap.
Officer Cox radioed for backup. When other officers arrived, they surrounded the automobile and ordered the appellant and Guthrie to put their hands in the air. When the appellant and Guthrie exited the automobile, the officers saw a short barrelled shotgun on the floorboard. They searched the appellant and found a .25 caliber automatic pistol.
The shotgun and the pistol were received into evidence at trial. To determine whether it would be error to receive these items into evidence, we must determine whether the appellant's arrest was lawful.
 "The United States Supreme Court, in United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), considered the issue of an investigatory stop of a person by officers of one police department in reliance on another police department's bulletin that the person was wanted for investigation of a felony. After determining that '[t]he same interests that weigh in favor of permitting police to make a Terry stop to investigate a past crime . . . support permitting police in other jurisdictions to rely on flyers or bulletins in making stops to investigate past crimes,' the Court concluded: '[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information.' Hensley, 469 U.S. at 232, 105 S.Ct. at 682. The Hensley Court held that '[a]ssuming the police make a Terry stop in objective reliance on a flyer or bulletin, . . . evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop, United States v. Robinson, [536 F.2d 1298 (9th Cir. 1976)], and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department.' Hensley, 469 U.S. at 233, 105 S.Ct. at 683."
Ex parte Peoples, 510 So.2d 574, 576-77 (Ala. 1987).
Based on the evidence presented at trial, it appears that Officer Cox relied on "articulable facts" in the bulletin that supported a "reasonable suspicion" that the appellant and Guthrie were suspects wanted in connection with a robbery-murder in Alabama. The automobile the appellant and Guthrie were driving matched the description in the bulletin and Guthrie and the appellant matched the description of the suspects.
The appellant's arrest was legal; therefore, the court did not err in receiving items into evidence that were obtained pursuant to a search incident to that arrest. *Page 1032 
 II
The appellant contends that the indictment charging him with murder during the course of a robbery was unconstitutionally vague and did not sufficiently apprise him of the charges against him. The indictment reads as follows:
 "HARVEY LEE WINDSOR, whose true name is otherwise unknown to the Grand Jury, did intentionally cause the death of Rayford W. Howard by shooting him with a shotgun, and Harvey Lee Windsor was in the course of committing or attempting to commit a theft of money, the lawful currency of the United States of America, a more particular denomination and description of which is otherwise unknown to the Grand Jury, the property of Rayford W. Howard, with the intent to overcome his physical resistance or physical power of resistance, while the said Harvey Lee Windsor was armed with a deadly weapon or a dangerous instrument, to-wit: a shotgun, in violation of § 13A-5-40(a)(2) of the Code of Alabama. . . ."
Specifically, the appellant contends that the indictment was deficient because it did not state the value of the currency that was taken.
 "Prior to the enactment of §§ 13A-8-40 et seq. of the 1975 Code of Alabama, there was no statutory robbery in Alabama and the offense was derived from the common law. See Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962); Watts v. State, 53 Ala. App. 518, 301 So.2d 280 (1974). Common law robbery required a 'taking' of property from the person of another, Wilson v. State, 268 Ala. 86, 105 So.2d 66 (1958), although the amount or value of the property taken was immaterial, Sanders v. State, 289 Ala. 224, 266 So.2d 802 (1972); Harris v. State, 44 Ala. App. 449, 212 So.2d 695 (1968).
 "The present robbery statutes, however, do not require a 'taking' of property, Marvin v. State, 407 So.2d 576 (Ala.Cr.App. 1981); Ala. Code §§ 13A-8-40 through 13A-8-44 (1975) (Commentary), so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. The operative words of the current robbery statute are 'in the course of committing a theft,' which includes an attempted theft, Marvin v. State, supra, rather than the common law element of an actual 'taking from the person.' "
Grace v. State, 431 So.2d 1331, 1333 (Ala.Cr.App. 1982).
Robbery is an offense against the person and, therefore, the value of the property taken during a robbery is not an element of the crime. See §§ 13A-8-40 through 13A-8-44, Code of Alabama 1975. The indictment charging the appellant with murder during the course of a robbery was not deficient.
 III
The appellant contends that the court erred in not granting him a continuance. On the day of trial, the appellant requested a continuance to allow an attorney from the Alabama Capital Resource Center to join the two attorneys already representing him. The court refused to grant the continuance at such a late date, but did not in any way prohibit the new attorney from joining in representing the appellant.
The attorney from the Alabama Capital Resource Center then stated to the court that he refused to represent the appellant unless the court granted a continuance. He conceded that he had not joined in the appellant's defense earlier because he thought that a plea bargain was being arranged. The court, however, stated that a plea bargain had never been a possibility.
The appellant contends that the denial of the continuance was a denial of his right to counsel.
 " 'The right to counsel "cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." . . . Judges must be vigilant that requests for appointment for a new attorney on the eve of trial should not become a vehicle for achieving delay.' United States v. Llanes, (2 Cir. 1967) 374 F.2d 712 at 717; Bowman v. United States, (5 Cir. 1969) 409 F.2d 225."
Fisher v. State, 346 So.2d 4, 7 (Ala.Cr.App.), cert. denied,346 So.2d 8 (Ala. 1977). *Page 1033 
Whether to grant a continuance is in within the discretion of the trial court. Daniels v. State, 621 So.2d 335 (Ala.Cr.App. 1992). The trial court's ruling will be reversed only upon a showing that the trial court abused its discretion. Smith v.State, 623 So.2d 369 (Ala.Cr.App. 1992), cert. denied,510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993). The trial court did not abuse its discretion in this case.
 GUILT PHASE ISSUES IV
The appellant next contends that the court erred in refusing to remove a juror from the venire whom he challenged for cause. After the appellant challenged the juror, the court brought the juror to the bench and the following occurred:
 "THE COURT: [Juror], you expressed an opinion concerning the defendant's rights in a case. You indicated that you resented the fact that prisoners had certain conditions and rights, and you were concerned about crime. Does that opinion that you have keep you from listening to the evidence in this case and considering the evidence and law and render an impartial verdict in this case?
 "JUROR: It might. That would be a concern of mine. And being that I know Lamar [Williamson, Assistant District Attorney].
 "THE COURT: If you considered the evidence and had to return a verdict against the side Lamar is representing, would it cause you difficulty?
 "JUROR: I hope not. I would do what I thought was right.
 "THE COURT: Do you feel that knowing Lamar might influence you in this case?
 "JUROR: I know his wife and kids. I have never been on a jury, so I don't know.
 "THE COURT: Do you feel you could listen to the evidence and return a fair and impartial verdict?
"JUROR: Yes.
 "THE COURT: Could you hold the State to the burden that they would have to prove beyond a reasonable doubt the defendant's guilt?
 "JUROR: I would have to know whatever evidence is there — you have to know for sure.
 "THE COURT: Thank you. Challenge for cause by defendant is denied."
The juror indicated that she could render a fair verdict based on the evidence presented at trial.
 "[W]here a juror states that he has opinions but that he would try the case fairly and impartially according to the law and the evidence and that he would not allow his opinion to influence his decision, it is not error for a trial judge to deny a challenge for cause. Howard v. State, 420 So.2d 828, 831 (Ala.Cr.App. 1982)."
Mahan v. State, 508 So.2d 1180, 1182 (Ala.Cr.App. 1986).
The court did not err in refusing to grant the appellant's challenge for cause.
 V
The appellant further contends that the security measures used at his trial were excessive and prejudiced him before the jury, thereby denying him a fair trial. The record reveals that the security measures consisted of armed deputies in the courtroom. The security measures at the appellant's trial were not excessive in light of the fact that the appellant had been indicted for two capital murders.
The trial court can best determine what security measures are necessary. "Within constitutional limits, great weight must be accorded the discretion of the trial court. The trial judge is responsible for maintaining order in his courtroom. He understands infinitely better than we what is necessary to perform his duty." Goodwin v. State, 495 So.2d 731, 733
(Ala.Cr.App. 1986).
The security measures at the appellant's trial did not deny him his right to a fair trial.
 VI
The appellant contends that the state withheld discoverable evidence from the defense. Specifically, the appellant contends *Page 1034 
that the state, by not providing him with fingerprint evidence that the state presented at trial, did not comply with the court's discovery order and violated Rule 16, A.R.Crim.P.
In response to the appellant's objections to the fingerprint evidence at trial and after a lengthy discussion, the court found that the state had not violated the discovery order. The court stated:
 "The Court renews its finding and cannot find that the evidence — this fingerprint stuff — was in the possession of the District Attorney and not made available to the defendant in a timely fashion. The main problem with this case is the evidence in this case has been in St. Clair County, Colbert County, and one or two courts of appeal, and collected from different sources at different times. The Court has made available fingerprint records and the Court granted this morning the defendant funds for a fingerprint expert. The Court cannot find the Court's order has been violated by the State. The Court will require the State to refrain from any other testimony concerning fingerprints for the remainder of the day, and allow the defendant a chance to review these fingerprint documents which are now in their possession."
The court did not err in refusing to find that the state had violated the discovery order and Rule 16. The state must make fingerprint evidence available to an accused as soon as it can do so, but there is no evidence that the state failed to make that evidence available as soon as practicable in this case.
 VII
The appellant next argues that the court erred in allowing two witnesses to present hearsay testimony. Bobbie Sue Osborn testified that the appellant's codefendant, Guthrie, visited her on February 25, 1988, and was accompanied by another man that he told her was a "buddy." Sammie Sue Wilson Osborn testified that when Guthrie visited her on February 25, Guthrie called the man with him "Harvey." Sammie Sue Wilson Osborn further identified the appellant in court as the man that visited her house with Guthrie on February 25. The appellant did not object to these two statements at trial; therefore, they must be reviewed under the plain error doctrine. Rule 45A, A.R.App.P.
"A statement which is useful in identifying a person, time, place or other thing is admissible for that purpose and, therefore, is not hearsay." C. Gamble, McElroy's AlabamaEvidence, § 273.01 (4th ed. 1991). The court did not err in receiving this testimony into evidence.
 VIII
The appellant further contends that the identification testimonies of Bobbie Sue Osborn, Sammie Sue Wilson Osborn, and Tommy Pepper were tainted by unduly suggestive out-of-court photographic identifications. Bobbie Sue Osborn, however, did not identify the appellant in court. Both Sammie Sue Osborn and Tommy Pepper identified the appellant in court and testified that their in-court identification of the appellant was based on their previous observations of the appellant and not upon their identification of a photograph of the appellant.
 "When an in-court identification of the accused is shown to have a basis independent of any pre-trial identification, then it is correctly received into evidence. Coleman v. State, [487 So.2d 1380 (Ala.Cr.App. 1986)]; Jackson v. State, 414 So.2d 1014 (Ala.Cr.App. 1982); Matthews v. State, [401 So.2d 241 (Ala.Cr.App. 1981), cert. denied, 401 So.2d 248 (Ala. 1981)]."
Ex parte Stout, 547 So.2d 901, 904 (Ala. 1989).
Sammie Sue Osborn had the opportunity to observe the appellant in her home on February 25, 1988. She testified that the appellant sat across from her at her kitchen table. The court found that, based on her opportunity to observe the appellant, her identification of him from the photographic lineup was not relevant. The court stated:
 "If her in-court identification is not based on the photographs, then the photographs aren't relevant. What she just said sounds like it came from the textbooks. She did not remember what he looked like. She could not even describe him in the *Page 1035 
the guy I saw' — that is based on seeing him today. If it had been written in the textbook, it wouldn't be any better than that. The Court finds the in-court identification is not based on being tainted by the photographs. It is an independent identification based on recollection. Court will allow the State to go into it without a hearing concerning the photographic lineup."
Tommy Pepper's opportunity to view the appellant was not as lengthy or at as close range as Ms. Osborn's was. Therefore, the court held a hearing at which it examined the photographs that were shown to Tommy Pepper as part of the photographic lineup. The trial court made the following findings:
 "After reviewing the photo lineup, the Court finds the photograph in the lineup, number one, is not unduly suggestive. The Court finds that there is nothing outstanding as to any particular photograph. They all appear to be white males, younger — beards and substantially the same length, although not exact — hair styles and hair color, very similar. Quite frankly, I think it is amazing that they found as many as they did."
 "The only one I would say is unduly suggestive would be the guy who is standing in front of a house — he is not Mr. Windsor — and wearing the 'Are we having fun yet?' tee shirt. That is the one that would be of any substantial difference in this. The Court does not find the photo lineup in itself is in any way unduly suggestive or the manner in which it was conducted. There is the issue of the prior publication of the newspaper photo. The Court cannot say that has tainted the identification. The witness states he does not even remember reading the article, although there is testimony that he told someone he did read the article. As to the motion to quash the identification, the Court overrules and denies that motion."
Here, the witnesses who identified the appellant in court had an opportunity to observe the appellant. They testified that their in-court identifications of the appellant were based on these observations and not upon photographs of the appellant that they were presented in the photographic lineup. The court did not err in allowing these witnesses to identify the appellant in court as the person they had seen on another occasion.
 IX
The appellant contends that the court erred in receiving into evidence testimony concerning uncharged crimes. Specifically, the appellant contends that it was error to receive evidence concerning the appellant's participation in the robbery and murder of Randal Earl Pepper.
 " 'Evidence of the accused's commission of another crime is admissible if such other crime is inseparably connected with or is a part of the res gestae of the now-charged crime. This rule is often expressed in terms of the other crime and the now-charged crime being parts of one continuous transaction or one continuous criminal occurrence.' C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 69.01(3). See also Orr v. State, 462 So.2d 1013, 1015 (Ala.Cr.App. 1984). 'Evidence of other crimes is properly admissible as part of the res gestae if all of the criminal acts are part of one continuous criminal adventure by the same party occurring within a matter of hours. Miller v. State, 405 So.2d 41 (Ala.Crim.App. 1981). See also Moseley v. State, 357 So.2d 390
(Ala.Crim.App. 1978); Summers v. State, 348 So.2d 1126
(Ala.Crim.App.), cert. denied, 348 So.2d 1136 (Ala. 1977).' Pettaway v. State, 494 So.2d 884, 886
(Ala.Cr.App. 1986). In the present case, this evidence 'was intimately connected with the same transaction which is the basis of the State's case. . . . The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge.' Blanco v. State, 515 So.2d 115, 120 (Ala.Cr.App. 1987) and cases cited therein. 'The trial court did not err in overruling appellant's objection to the admission of such evidence. No matter how many distinct crimes may be involved, all the details of one continuous *Page 1036 
criminal occurrence or adventure may be given as part of the offense with which the defendant is charged.' Coleman v. State, 487 So.2d 1380, 1385
(Ala.Cr.App. 1986) and cases cited therein."
Rowell v. State, 570 So.2d 848, 852 (Ala.Cr.App. 1990).
The evidence presented at trial tended to show that the robbery-murder in this case and the robbery-murder of Mr. Pepper were part of a continuous criminal adventure. Each robbery-murder was committed in a similar manner on the same day. It was not error to receive evidence of another criminal act that was a part of a continuous crime spree.Rowell, 570 So.2d at 852.
 X
The appellant next contends that because the evidence presented by the state was in part circumstantial, the state failed to present sufficient evidence that the appellant committed a murder during the course of a robbery.
 "When reviewing a challenge to the sufficiency of evidence, we accept 'as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). 'When the court is reviewing a conviction based upon circumstantial evidence, the question that must be answered is whether "the evidence adduced is consistent with guilt and inconsistent with any reasonable hypothesis that the [defendant] is innocent." ' Cagle v. City of Gadsden, 495 So.2d 1144, 1147 (Ala. 1986), quoting Ex parte Williams, 468 So.2d 99, 102 (Ala. 1985). 'Furthermore, we cannot substitute our judgment for that of the jury.' Owens v. State, 597 So.2d 734, 737 (Ala.Cr.App. 1992). 'Whether the circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis that that of the defendant's guilt is a question for the jury and not the court.' Cumbo v. State, 368 So.2d 871, 875
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979)."
Faust v. City of Gadsden, 639 So.2d 536, 538 (Ala.Cr.App. 1993).
Viewing the evidence in the light most favorable to the state, there was sufficient evidence from which the jury could find that the appellant murdered and robbed Rayford Howard.
 XI
In the appellant's brief following remand, the appellant contends that remarks made during the state's closing argument during the guilt phase of the trial were unduly prejudicial to him. The appellant did object several times during the state's closing argument; however, he has not identified, in his brief, those comments he contends were impermissible. Reviewing the entire closing argument, we do not find that any of the court's rulings on the appellant's objections were in error. Furthermore, none of the comments made during closing argument amounted to plain error. Rule 45A, A.R.App.P.
 XII
The appellant contends that the court's charge to the jury on accomplice liability was incorrect in that, based on the charge, the jury could have found the appellant guilty of intentional murder during the course of a robbery without finding that the appellant possessed the intent to commit a robbery. The appellant, however, did not object to the charge at trial. Therefore, we must review the charge under the plain error doctrine. Rule 45A, A.R.App.P.
A review of the court's charge on accomplice liability reveals that the court instructed the jury that in order to find the appellant guilty of murder during the course of a robbery, it had to find that the appellant possessed the specific intent to murder and that the murder occurred during a robbery in the first degree. The court had previously instructed the jury on the law concerning robbery in the first degree, correctly informing the jury of the required element of intent. The court's charge on accomplice liability was not in error and was consistent with the *Page 1037 Alabama Pattern Jury Instructions: Criminal on this issue.
 XIII
The appellant contends that the court erred in failing to instruct the jury on voluntary intoxication and manslaughter as a lesser included offense of capital murder. The appellant did not present this issue at trial; therefore, we must review this contention under the plain error doctrine. Rule 45A, A.R.App.P.
The appellant is correct in his assertion that where there is evidence of intoxication, the court must instruct the jury how this evidence relates to the intent to murder.
 "A charge on intoxication should be given if ' "there is an evidentiary foundation in the record sufficient for the jury to entertain a reasonable doubt" ' on the element of intent. Coon v. State, 494 So.2d 184, 187 (Ala.Cr.App. 1986) (quoting Government of the Virgin Islands v. Carmona, 422 F.2d 95, 99 n. 6 (3d Cir. 1970)). See also People v. Perry, 61 N.Y.2d 849, 473 N.Y.S.2d 966, 966-67, 462 N.E.2d 143, 143-44 (App. 1984) ('[a] charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis'). An accused is entitled to have the jury consider the issue of his intoxication where the evidence of intoxication is conflicting, Owen v. State, 611 So.2d 1126, 1128
(Ala.Cr.App. 1992); Crosslin v. State, 446 So.2d 675, 682 (Ala.Cr.App. 1983), where the defendant denies the commission of the crime, Coon v. State, 494 So.2d at 187; see Moran v. State, 34 Ala. App. 238, 240, 39 So.2d 419, 421, cert. denied, 252 Ala. 60, 39 So.2d 421 (1949), and where the evidence of intoxication is offered by the State, see Owen v. State, 611 So.2d at 1127-28."
Fletcher v. State, 621 So.2d 1010, 1019 (Ala.Cr.App. 1993). Likewise, " '[w]hen the crime charged involves a specific intent, such as murder, and there is evidence of intoxication, the trial judge should instruct the jury on the lesser included offense of manslaughter.' " Harper v. State, 629 So.2d 67, 69
(Ala.Cr.App. 1993), quoting Gray v. State, 482 So.2d 1318, 1319
(Ala.Cr.App. 1985).
In this case, however, there was no evidence that the appellant was intoxicated. Although, there was evidence that the appellant had been drinking beer on the day of the robbery-murder, there was no evidence concerning the quantity of beer he consumed that day at the time of the murder. Evidence that someone was drinking an alcoholic beverage is not evidence that that person was intoxicated. There was no "reasonable theory" to support an instruction on intoxication because there was no evidence of intoxication. The court did not err in not instructing the jury on intoxication and manslaughter where there was no evidence that the appellant was intoxicated at the time the robbery-murder occurred.
 XIV
The appellant contends that the court erred in not charging the jury that it could not find the appellant guilty of murder in the course of a robbery if they found that the intent to rob arose after the murder. The appellant did not present this issue to the trial court; therefore, we must review this assertion under the plain error doctrine. Rule 45A, A.R.App.P.
 "To sustain a conviction under § 13A-5-40(a)(2) for capital robbery-murder, the state must prove beyond a reasonable doubt: (1) a 'robbery in the first degree or an attempt thereof,' as defined by § 13A-8-41; (2) a 'murder,' as defined by § 13A-6-2(a)(1); and (3) that the murder was committed 'during' the robbery or attempted robbery, i.e., that the murder was committed 'in the course of or in connection with the commission of, or in immediate flight from the commission of the robbery or attempted robbery in the first degree, § 13A-5-39(2). Connolly v. State, 500 So.2d 57 (Ala.Cr.App. 1985), aff'd, 500 So.2d 68 (Ala. 1986). The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing. *Page 1038 Davis v. State, 536 So.2d 110 (Ala.Cr.App. 1987); Magwood v. State, 494 So.2d 124 (Ala.Cr.App. 1985), aff'd, Ex parte Magwood, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). The intentional murder must occur during the course of the robbery in question; however, the taking of the property of the victim need not occur prior to the killing. Clark v. State, 451 So.2d 368 (Ala.Cr.App.), cert. denied, 451 So.2d 368 (Ala. 1984). While the violence or intimidation must precede or be concomitant with the taking, it is immaterial that the victim is dead when the theft occurs. Thomas v. State, 460 So.2d 207 (Ala.Cr.App. 1983), aff'd, 460 So.2d 216
(Ala. 1984)."
Hallford v. State, 548 So.2d 526, 534 (Ala.Cr.App. 1988),aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945,110 S.Ct. 354, 107 L.Ed.2d 342 (1989).
It was not error for the court not to instruct the jury that the intent to rob had to be present before the murder occurred. A review of the court's charge reveals that the court correctly instructed the jury concerning murder during the course of a robbery.
 PENALTY PHASE ISSUES XV
The appellant contends that the court erred in denying his motion requesting that the state give him notice of which aggravating circumstances the state would rely upon during the penalty phase. The state relied only upon the aggravating circumstance that the murder was committed during the course of a robbery. § 13A-5-49(4), Code of Alabama 1975.
"In a capital case, the aggravating circumstances not only must be alleged in the indictment, but they must also be proven beyond a reasonable doubt. Beck v. State, 396 So.2d 645, 663
(Ala. 1980)." Ex parte Arthur, 472 So.2d 665, 667 (Ala. 1985). The aggravating circumstance of murder during the course of a robbery was alleged in the indictment. In fact, it was the only statutory aggravating circumstance alleged in the indictment. Therefore, the appellant received notice of the only aggravating circumstance that the state intended to use.
 XVI
The appellant contends that the court erred in refusing to allow him to present certain mitigating evidence during the sentencing hearing. The appellant did not present this issue to the trial court; therefore, we must review this contention under the plain error doctrine. Rule 45A, A.R.App.P.
The appellant's only witness at his sentencing hearing was his mother, Lillian Windsor. She testified that the appellant had grown up without much money and that he had been involved in a motorcycle accident in 1985. Mrs. Windsor testified that after the accident, the appellant acted differently than he had before. During her testimony concerning a visit to a hospital where the appellant was a patient following the accident, the following occurred:
 "Q [defense attorney]: How long did Harvey stay in the hospital?
"A [Mrs. Windsor]: Maybe three or four months.
"Q: He was pretty banged up?
"A: Yes, sir.
"Q: Would you go see him regularly?
 "A: I went down there, but they wouldn't let me in. They said, 'He won't even know who you are.' They said they was afraid he might hurt himself. [They] said they were not worried about him hurting anybody, but that he might try to hurt himself. They were more concerned about him hurting himself than —
 "[Prosecution]: Judge, we object. This is hearsay as to what 'they' said.
"THE COURT: Sustained.
"Q: Just tell me what you know to be a fact."
Thereafter, defense counsel resumed questioning Mrs. Windsor about the appellant's behavior after the accident.
The appellant contends that the court's sustaining of the hearsay objection violated § 13A-5-45(d), Code of Alabama 1975, which provides that "[a]ny evidence which has probative value and is relevant to sentence shall *Page 1039 
be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence. . . ."
The court's ruling was in error because hearsay evidence is admissible at the penalty phase of a capital case under §13A-5-45(d). This error, however, does not require a reversal. The appellant's mother was allowed to testify extensively about the effects of the appellant's motorcycle accident. She testified that he broke his leg in the accident but that "they" did not think he had received a head injury. She, however, based on her own observations, thought that he had received a head injury.
She also testified that, while he was in the hospital, he underwent psychiatric evaluation and was administered some tests. She felt that he improved some while he was in the hospital but that after the accident he was not the same as he had been before the accident.
Based on Mrs. Windsor's testimony concerning the appellant, the court's exclusion of the hearsay testimony was not reversible error under the plain error doctrine.
 XVII
The appellant next contends that the court erred in counting robbery as an element of the capital offense and as an aggravating circumstance. We recently addressed this argument in Burton v. State, 651 So.2d 641 (Ala.Cr.App. 1993).
 "The appellant was convicted of the capital offense of murder during the course of a robbery in the first degree. The appellant argues that the fact that robbery was counted both as an element of capital murder during the guilt phase of the trial, under § 13A-5-40(a)(2), Code of Alabama 1975, and as an aggravating circumstance during the penalty phase of the trial, under § 13A-5-49, violated his Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution and his rights under Alabama law. This practice, known as 'double counting' or 'overlapping,' has been upheld. Haney v. State, 603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412
(Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); Kuenzel [v. State, 577 So.2d 474, 489 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991)].
 "Section 13A-5-50, Code of Alabama 1975, states, in part, as follows:
 " 'The fact that a particular capital offense as defined in section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.'
 "Clearly, § 13A-5-50 provides that a jury may consider an element of capital murder as an aggravating circumstance if that element is listed in § 13A-5-49. Further, this court has repeatedly held that the use of an element of capital murder in such a way does not, as the appellant argues, punish a defendant twice for the same offense. Kuenzel, supra; see also Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
 " 'A capital punishment scheme, under which the same felony may form the basis of an essential element of the crime and an aggravating circumstance for consideration by the jury in recommending a sentence, does not constitute a denial of the guarantee against double jeopardy.'
 "Kuenzel, 577 So.2d at 488, quoting Fortenberry v. State, 545 So.2d 129, 142 (Ala.Cr.App. 1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990)."
Burton, 651 So.2d at 657-58.
It was not error for the court to consider the robbery both as an element of the capital offense and as an aggravating circumstance.
 XVIII
The appellant contends that several comments by the state during closing argument in the penalty phase of the trial constituted *Page 1040 
error. The appellant did not object to these comments.
 " 'While this failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice.' Ex parte Kennedy, 472 So.2d 1106, at 1111 [(Ala. 1985)] (emphasis in original). 'This court has concluded that the failure to object to improper prosecutorial arguments . . . should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.' Johnson v. Wainwright, 778 F.2d 623, 629
n. 6 (11th Cir. 1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). 'Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.' United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). See also Biddie v. State, 516 So.2d 837, 843 (Ala.Cr.App. 1986), reversed on other grounds, 516 So.2d 846 (Ala. 1987)."
Kuenzel v. State, 577 So.2d 474, 489 (Ala.Cr.App. 1990), aff'd,577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886,112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
A review of the entire closing argument of the state at the penalty phase of the trial reveals that no error occurred. The comments that the appellant now contends were error were either permissible comments on facts in evidence or arguments concerning the weight to accord aggravating and mitigating circumstances. See Williams v. State, 601 So.2d 1062
(Ala.Cr.App. 1991).
 XIX
The appellant contends that the court erred in not instructing the jury that it did not have to unanimously find that a mitigating circumstance existed before a juror could consider that circumstance in reaching his or her decision during the penalty phase. The appellant did not object to the jury charge concerning mitigating circumstances; therefore, we must review this contention under the plain error doctrine. Rule 45A, A.R.App.P.
We have previously addressed this argument inKuenzel, 577 So.2d at 521:
 "Under Mills v. Maryland, 486 U.S. 367, 384, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), a sentence of death must be vacated where 'there is a substantial probability that reasonable jurors, upon receiving the judge's instructions . . ., well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance.'
 "We have examined the complained of portion of the trial judge's charge on mitigating circumstances and find that it is in accordance with the pattern jury instruction and in accordance with § 13A-5-45(g). Therefore, we find no plain error."
The court correctly instructed the jury in accordance with the Alabama Pattern Jury Instructions: Criminal. There is no basis from which we can conclude that the jury might have been under the misconception that it must unanimously find the existence of a mitigating factor before a juror could consider it in reaching his or her determination as to the appropriate sentence. See also Ex parte Martin, 548 So.2d 496 (Ala.), cert.denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989).
 XX
The appellant contends that the court erred in failing to consider the existence of a statutory mitigating circumstance and that the court's sentencing order was in error because, he argues, each nonstatutory mitigating circumstance considered by the court was not specifically listed.
The appellant contends that the court's failure to find that "[t]he defendant has no significant history of prior criminal activity," was in error. § 13A-5-51(1), Code of Alabama 1975. He argues that his three prior convictions for theft of property and receiving stolen property did not show that he had a "significant history of prior criminal activity," because receiving stolen property is not a violent crime. Section13A-5-51(1) *Page 1041 
does not require a significant history of priorviolent criminal activity. The court did not err in not finding that the appellant had no significant history of criminal activity where the appellant had three prior felony convictions.
Additionally, the court's sentencing order was sufficient. After addressing the statutory mitigating circumstances, the court's sentencing order addressed the nonstatutory mitigating circumstances, stating:
 "The Court has considered all other mitigating circumstances demonstrated by the evidence in the guilt phase, and the sentencing phase.
 "The Court has considered the evidence of the defendant's upbringing and home life. The court has considered evidence of the defendant's head injury suffered by him several years prior to the commission of this capital offense. The Court has further considered evidence and argument regarding the circumstantial nature of the State's case as well as the defendant's argument concerning his lack of participation in the offense. The Court has considered any and all other mitigating circumstances justified by the evidence, argument and the presentence investigation report in this case."
The court's order was not in error. The court specifically stated that it considered all evidence offered in mitigation. See Dobyne v. State, 672 So.2d 1319 (Ala.Cr.App. 1994).
 XXI
As required by § 13A-5-53, Code of Alabama 1975, we address the propriety of the appellant's conviction and the sentence of death. The appellant was indicted and convicted of capital murder as defined in § 13A-5-40(a)(2), Code of Alabama 1975, i.e., murder during the course of a robbery.
The record reflects that the appellant's sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Code of Alabama 1975.
A review of the record shows that the trial court correctly found that the single aggravating circumstance of murder during the course of a robbery, § 13A-5-49(4), Code of Alabama 1975, outweighed the mitigating circumstances. In addition to finding that the appellant's age was a mitigating circumstance, §13A-5-51(7), Code of Alabama 1975, the court also considered evidence of nonstatutory mitigating circumstances. The court weighed the mitigating and the aggravating circumstances and sentenced him to death. We agree with the trial court's findings.
As required by § 13A-5-53(b)(2), Code of Alabama 1975, this court must independently weigh the aggravating and the mitigating circumstances to determine the propriety of the appellant's death sentence. After an independent weighing, this court is convinced that the appellant's sentence of death is the appropriate sentence.
As § 13A-5-53(b)(3), Code of Alabama 1975, provides, we must also address whether the appellant's sentence was disproportionate or excessive to the penalties imposed in similar cases. The appellant's sentence was neither. SeeKuenzel, supra; Bradley v. State, 494 So.2d 750
(Ala.Cr.App. 1985), aff'd, 494 So.2d 772 (Ala. 1986),cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699
(1987). Two-thirds of all death sentences in Alabama are imposed for murders that occurred during the course of a robbery. SeeKuenzel; Brownlee v. State, 545 So.2d 151 (Ala.Cr.App. 1988),aff'd 545 So.2d 166 (Ala.), cert. denied,493 U.S. 874, 110 S.Ct. 208,107 L.Ed.2d 161 (1989).
Last, we have searched the entire record for any error that may have adversely affected the appellant's substantial rights and have found none. See Rule 45A, A.R.App.P.
The appellant received a fair trial. Therefore, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The appellant's codefendant, Lavon Guthrie, was convicted of capital murder. This court reversed his conviction in Guthriev. State, 616 So.2d 914 (Ala.Cr.App. 1993). *Page 1042