On Application for Rehearing

McMILLAN, Presiding Judge.
This Court’s unpublished memorandum of April 27, 2001, is withdrawn, and the following is substituted therefor.
The appellant, Walter Lee Morgan, was found guilty of murder, and the trial court sentenced him to life imprisonment. Evidence at trial tended to show the following: On the night of June 27, 1999, Rose Marie Gibbs watched a movie with her sister, and then went with her to clean the “Wings Over Jordan” church. They finished cleaning shortly after midnight and drove to her sister’s house. The appellant, who was her sister’s estranged husband, drove up and got out of his car. The sisters drove away and went to their mother’s *951 home. When they arrived, the appellant again drove up behind them and go out of his ear. He began cursing at his estranged wife and asking her to return a spare tire that he had earlier lent to her brother. Ms. Gibbs went into the house to get the tire. As she was returning, she saw the appellant pull a gun from his pocket and heard her sister yell, “He’s got a gun, run.” Ms. Gibbs saw the appellant fire two shots into the truck before she ran inside the house and locked the door. The medical examiner subsequently recovered four bullets from her sister’s body. He testified that the victim had died from multiple gunshot wounds.
Earl Casher, the mother’s next-door neighbor, testified that he saw the appellant drive by the house several times. He then heard an argument and looked out his window to see the appellant cursing outside the victim’s truck. Casher saw the appellant put his hand into the window of the victim’s truck and start shooting. The appellant called several witnesses and also testified in his own behalf. Carrie Lee Washington, the appellant’s former landlady, testified that she had heard the appellant and his wife fighting frequently and that the victim was the aggressor and was physically abusive. She, Pat Gulley, and Isaiah Washington testified that the appellant seemed to be in another world and in danger of having a nervous breakdown. The appellant then testified that he did not remember the shooting. He also testified that he did not know what he was doing or whether it was right or wrong.
I.
The appellant contends that the trial court violated his right to due process by refusing to allow defense witness Larry Hallett to testify as to his opinion of the appellant’s mental condition. He argues that the testimony directly related to the defense plea of not guilty by reason of mental disease or defect and was admissible as lay opinion testimony on the issue of the appellant’s mental state at the time of the offense.
• The appellant’s counsel made the following proffer with regard to Hallett’s testimony: Hallett -had represented the appellant in a divorce from his first wife in 1994. When Hallett saw the appellant in 1998, he noticed that the appellant had changed, that he “had gotten thin[,] that he seemed to be troubled and that he was disconnected with regard to the circumstances of their conversation.” Counsel further told the court that “Mr. Hallett is not going to testify much differently from what the other witnesses were saying; that he [the appellant] lost weight; that he was — to use what Mr. Hallett is going to say — he became disconnected. Other people have said that he’s gone crazy; other people have said he was having a nervous breakdown. But that’s what I’m going to proffer to the court.”
Determining the relevance of evidence is within the sound discretion of the trial court. Borden v. State, 522 So.2d 338 (Ala.Crim.App.1988). Here, the victim’s sister testified that the victim married the appellant in April or May 1997, that she lived with him for about a year, and that she moved out in August 1998.[1] The shooting occurred on June 27, 1999. The appellant’s counsel did not indicate when in 1998 Hallett had seen the appellant, but Hallett’s observation clearly took place between 6 and 18 months before the shooting. The trial court did not abuse its *952 discretion by determining that Hallett’s testimony was not relevant with regard to the appellant’s mental condition at the time of the offense.
Furthermore, the evidence that the appellant wanted to elicit from Hallett was cumulative. The trial court had already allowed five witnesses, including the appellant, to testify to the same behavior the appellant expected Larry Hallett to testify to. It is within the trial judge’s discretion to exclude cumulative evidence. Lewis v. State, 414 So.2d 470 (7ya.Crim.App.1982).
Thomas Martin, the appellant’s longtime employer, testified that, for approximately two years before the appellant was incarcerated for the shooting, he had exhibited “different behavior,” including losing weight, seeming not to care about work and reporting late for work. Carrie Lee Washington, the appellant’s landlord and his neighbor, testified that, after the appellant married the victim, he stopped speaking and “looked like his mind would be some place else.” She also said that he would shake all over and that he was “on his way to a nervous breakdown.” Washington was unclear as to when the appellant had moved from her property, but she said that he visited her at least once afterward and that there was “something wrong” and that he was “shaking all over.” The appellant’s sister testified that she saw her brother change shortly after he married the victim. She said that she saw him try to get away from the victim’s physical attacks and that he would be “getting away screaming and, you know, like he was crazy and out of his mind.” She also said that her brother was “[having a njervous breakdown, going crazy, wouldn’t eat, wouldn’t talk, basically, off to hi[m]self like he was in another world.” She testified that this behavior lasted up until the time of the victim’s death. Isaiah Washington, Carrie Washington’s grandson, testified that he saw the victim yelling and screaming at the appellant in May 1998 and observed in later visits that the appellant “seemed very withdrawn or something, as if he was kind of — I don’t know. I say in another world or something. He wasn’t as talkative as he used to be.” Washington did not state when his visits with the appellant had ended.
The appellant testified that his problems with the victim began when they got married and included physical abuse. He said that he could not sleep, eat, or concentrate, and that he developed a “shaking problem.” He also said that he had gotten medication from a doctor after experiencing hallucinations and that his sister had called Charter Hospital on one occasion when he felt suicidal. The appellant stated that these medical incidents had occurred before the shooting, but he did not indicate the dates. He said that he remained in contact with the victim after she moved out and that she continued to abuse and upset him.
Based on the record, Larry Hallett could not have testified to the appellant’s mental condition at the time of the shooting. He also could not have testified to any behavior by the appellant that was not already in evidence. Therefore, the trial court did not abuse its discretion by refusing to allow Hallett to testify.
II.
The appellant also contends that the trial court erred by refusing to instruct the jury on the lesser-included offense of manslaughter. He argues that the facts warranted the requested charge because he testified that he had not intended to kill the victim.
A defendant is entitled to have charges given if these charges are not misleading or incorrect, and if they are *953 supported by any evidence, however weak, insufficient, or lacking in credibility. Ex parte Chavers, 361 So.2d 1106 (Ala.1978). However, a requested instruction is properly refused if it is not applicable to the facts of the case. Bogan v. State, 529 So.2d 1029 (Ala.Crim.App.1988). A person acts “recklessly” with regard to a result or a circumstance when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. § 13A-6-2(3), Ala.Code 1975. Here, the appellant requested a charge on reckless manslaughter, but he failed to offer any evidence that he had recklessly or carelessly caused the death of the victim.
It is not error for the trial court to refuse to charge on manslaughter where the evidence clearly shows that the accused, if sane, is guilty of murder. Gray v. State, 482 So.2d 1318 (Ala.Crim.App. 1985). Here, the evidence showed that the appellant left his car, pulled out a gun, and deliberately shot the victim at least four times. The appellant then offered as a defense that he did not know what he was doing, how many times his gun shot, or if his actions were wrong. The trial court properly determined that, under the facts of this case, the appellant was not entitled the requested manslaughter instruction.
UNPUBLISHED MEMORANDUM OF APRIL 27, 2001, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED; APPLICATION FOR REHEARING OVERRULED.
BASCHAB, SHAW, and WISE, JJ„ concur. COBB, J., dissents, with opinion.

. The appellant’s sister testified that the victim moved in with the appellant about two years before the date of trial, which was May 8 and 9, 2000. However, she also testified that the victim moved out at least 10 months before she was killed in June 1999.