WISE, Presiding Judge.
On June 8, 1992, the appellant, Harvey L. Windsor, was convicted of capital murder for the killing of Rayford W. Howard. The murder was made capital because he committed it during the course of a robbery. See § 13A-5-^10(a)(2), Ala.Code 1975. The jury unanimously recommended that Windsor be sentenced to death. On June 12, 1992, the trial court followed the jury’s recommendation and sentenced him to death.
This court originally reversed Windsor’s conviction and sentence. See Windsor v. State, 683 So.2d 1013 (Ala.Crim.App.1993). However, the Alabama Supreme Court reversed this court’s judgment. See Ex parte Windsor, 683 So.2d 1021 (Ala.1994). On remand from the Alabama Supreme Court, we affirmed Windsor’s conviction and sentence, see Windsor v. State, 683 So.2d 1027 (Ala.Crim.App.1994); the Alabama Supreme Court affirmed his conviction and sentence, see Ex parte Windsor, 683 So.2d 1042 (Ala.1996); and the United States Supreme Court denied his petition for certiorari review, see Windsor v. Alabama, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997). This court issued a certificate of judgment on November 5, 1996.
On April 1, 1998, Windsor filed a Rule 32 petition, challenging his conviction and sentence. The State filed an answer and motions for a partial dismissal. On November 18, 1998, the circuit court entered *809 an order partially dismissing some of the procedurally barred claims and granting Windsor thirty days to amend his petition to comply with the specificity requirement set forth in Rule 32.6(b), Ala. R.Crim. P. On December 18, 1998, Windsor filed an amended petition. After the State responded again, the circuit court again entered orders dismissing some of the claims on August 17, 1999. The circuit court later scheduled an evidentiary hearing on the remaining claims, but the hearing was continued and, ultimately, the case was assigned to a new judge. On February 17, 2006, the circuit court summarily dismissed the remaining claims from the petition. This appeal followed.
Windsor raises several arguments, including claims that his attorneys rendered ineffective assistance during the proceedings. In reviewing the circuit court’s rulings on the appellant’s arguments, we apply the following principles:
‘ “[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence.” Thompson v. State, 615 So.2d 129 (Ala.Cr.App.1992).’ Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App.1993), cert. denied, [511] U.S. [1046], 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
“In addition, ‘[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.’ State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App.1993).”
Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995).
“To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel’s performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
“ ‘The appellant must show that his counsel’s performance was unreasonable, considering all of the attendant circumstances.... “[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as of the time of counsel’s conduct.” Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.’
“Duren v. State, 590 So.2d 360, 362 (Ala.Cr.App.1990), aff'd, 590 So.2d 369 (Ala.1991), cert. denied, [503] U.S. [974], 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
“When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel’s conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App.1985). The burden is on the appellant to show that his counsel’s conduct was deficient. Luke.
“ ‘Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assis *810 tance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.’
“Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
“Initially we must determine whether counsel’s performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. ‘Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable....’ Lawley, 512 So.2d at 1372. This court must avoid using ‘hindsight’ to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App.1991).”
Hallford v. State, 629 So.2d 6, 8-9 (Ala.Crim.App.1992).
“In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that ‘[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.’ Id. We defer to this guidance and address the ‘prejudice’ prong, for ‘[wjith respect to the prejudice component, the lack of merit of [Thomas’s] claim is even more stark.’ Id. at 699, 104 S.Ct. at 2070.”
Thomas v. State, 511 So.2d 248, 255 (Ala.Crim.App.1987) (footnote omitted).
“Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr.App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir.1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App.1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).”
Davis v. State, 720 So.2d 1006, 1014 (Ala.Crim.App.1998).
“The purpose of ineffectiveness review is not to grade counsel’s performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992) (‘We are not interested in grading lawyers’ performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.’). We recognize that ‘[Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.’ Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something *811 more or something different. So, omissions are inevitable. But, the issue is not what is possible or Svhat is prudent or appropriate, but only what is constitutionally compelled.’ Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).”
Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir.2000) (footnote omitted.) Finally,
“[i]n Strickland [v. Washington, 466 U.S. 668 (1984)], we made clear that, to establish prejudice, a ‘defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ Id., at 694, 104 S.Ct. 2052. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.”
Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
The following facts, as set forth in this court’s opinion on direct appeal, are helpful to an understanding of this case:
“The evidence presented by the state tended to show that on February 25, 1988, Rayford W. Howard in St. Clair County and Randal Earl Pepper in Colbert County were robbed and murdered. The appellant and Lavon Guthrie were charged with the offenses. This appeal concerns only the robbery and murder of Rayford W. Howard.
“On February 25, at approximately 2:00 p.m., Rayford Howard was found dead in his store in St. Clair County. He died as a result of a shotgun blast to the chest. Money had been taken from the store’s cash register and the victim’s pants pockets had been emptied. A witness saw someone carrying a ‘sawed-off shotgun’ leave the victim’s store, open the breech and reload the gun, and get into a black sports car.
“On this same day, the appellant and Guthrie were seen in St. Clair County travelling together in a black Ford Mustang automobile with gold stripes and the word ‘boss’ written in gold on the sides. At approximately 1:00 p.m. that day, the appellant and Guthrie had visited Sammie Sue Wilson Osborn at her house. Ms. Osborn’s house was located approximately five miles from Rayford Howard’s store.
“The automobile in which the appellant was riding was seen later that afternoon travelling at a high rate speed in Marshall County and in Lawrence County. The automobile was also seen at Tommy’s Store, a convenience store, in Lawrence County. An occupant of the car discarded two Budweiser beer cans in the parking lot of Tommy’s Store.
“The automobile was also seen at approximately 8:00 p.m. at a store in Colbert County. The attendant at the Colbert County store, Randal Earl Pepper, was killed by a shotgun blast to the head. The appellant was identified as the person running from the store and getting into the automobile. When the appellant was arrested, he had in his possession a .25 automatic pistol that had belonged to Mr. Pepper.
“The automobile in which the appellant and Guthrie were travelling had been stolen on February 23, 1988, from Connie’s Quick Stop convenience store in Tiftonia, Tennessee. The automobile was recovered on February 26, at Tifto-nia Baptist Church, two-tenths of a mile from Connie’s Quick Stop. Guthrie’s sister’s house was located between Connie’s Quick Stop and the Tiftonia Baptist Church.
“When the automobile was searched, the following items were recovered: a *812 ring of keys, a receipt from Parisian department store, a .20 gauge shotgun shell, and cigarette butts. One of the keys on the recovered ring opened a padlock that secured the rear door of Howard’s Store. The Parisian receipt was for a suit that Mr. Howard had purchased for his wife. The .20 gauge shotgun shell had been fired from the same gun as a shell that was recovered outside Howard’s store. The appellant’s fingerprint was found on one of the cigarette butts.
“Additionally, Guthrie’s fingerprints were found on Mr. Howard’s driver’s license, which was recovered, along with his wallet and its contents, beside the road a few miles from his store. Guthrie’s fingerprints were also found on one of the Budweiser beer cans that was left at Tommy’s Store in Lawrence County.”
Windsor, 683 So.2d at 1030 (footnote omitted).
I.
Windsor’s first argument is that his counsel rendered ineffective assistance during the guilt phase of his trial.
A.
Windsor contends that his trial counsel did not procure necessary expert assistance. In relation to this claim, his argument in his amended petition consisted of the following:
“A criminal defendant’s right to the benefit of expert assistance is constitutionally recognized and protected. Ake v. Oklahoma, 470 U.S. 68 (1985); Griffin v. Illinois, 351 U.S. 12 (1956); Gayle v. State, 591 So.2d 153 (Ala.Crim.App.1991).
“... The state’s case against Mr. Windsor was almost entirely circumstantial. The only physical evidence that purportedly directly linked Mr. Windsor to the killing of Mr. Howard were fingerprints found on a cigarette butt recovered from the Mustang automobile supposedly used by Mr. Windsor and his codefendant, Colan Lavon Guthrie, in the commission of the crime. The fingerprints were identified as those of Mr. Windsor by the state’s expert witness (R 934-935). Having thus purportedly placed Mr. Windsor in the Mustang, the state also introduced two shell casings; one found at Mr. Howard’s store and the other in the Mustang. The state submitted testimony from a firearms expert that the two shell casings came from the same shotgun (R 947). This was literally the only physical evidence linking Mr. Windsor to the crime.
“... Given that these two items of physical evidence represented a crucial part of the state’s otherwise overwhelmingly circumstantial case, trial counsel was constitutionally required to make an effort to challenge the state’s interpretation of this evidence. Indeed, counsel recognized their responsibility to do so shortly before trial, by requesting funds to retain a fingerprint expert, which request was granted by the trial court. Nevertheless, halfway through the trial, counsel still had not retained an expert, and, in fact, never did so (R 881), leaving the state’s interpretation of this evidence unchallenged. The importance of having an expert is highlighted by a review of the testimony and cross-examination of the state’s fingerprint expert, Carol Curlee. Ms. Curlee made only one fingerprint identification of Mr. Windsor, that on the cigarette butt. On cross-examination Ms. Curlee admitted that this was only a partial print, and that she could not recall how many ‘points’ of similarity there were between that print and Mr. Windsor’s file prints *813 (R 936-937). A defense expert could, in all likelihood, have explained to the jury the weaknesses in Ms. Curlee’s identification, given these admissions on her part.
“... The state also introduced fingerprint evidence linking Mr. Guthrie to the killing of Mr. Howard (R 918-920, 924-926). This evidence was part of the state’s strategy of trying Mr. Guthrie, against whom there was more physical evidence instead of Mr. Windsor and then using circumstantial evidence to purportedly show that Mr. Windsor was with Guthrie on the day of the crime. Again, as defense counsel understood, expert assistance should have been obtained to challenge this fingerprint evidence as well.
“... Similarly, Mr. Windsor was constitutionally entitled to an expert on firearms and projectile examination to challenge the state’s interpretation of the shell casings found at Mr. Howard’s store and in the Mustang, and to rebut evidence offered by the state about shotgun residue traces on the victim’s hands. The latter evidence was offered to prove intent to murder by implying that the victim had raised his hands in surrender, before he was shot (R 426-429). The prosecutor, in his closing argument, made specific reference to the residue traces on the victim’s hands in support of proving intent to kill (R 992-993). Again, however, defense counsel made no effort to procure an expert and rebut the state’s evidence.
“... Trial counsel was also ineffective for failing to obtain the services of an expert pathologist. Again, counsel themselves saw the need for such an expert; at a pre-trial hearing on May 14, 1992, Mr. Holladay said: T am contemplating a motion to appoint an expert pathologist’ (R 31). A forensic pathologist could have evaluated the state’s medical evaluation of the victim, including, but not limited to, establishing the time of death. The state’s case was dependent in large part on placing Mr. Windsor and Mr. Guthrie at Mr. Howard’s store during a particular window of time on the day of the crime. The importance of the time element was reinforced by the confusion over the handling and disposition of the victim’s body. ■
“... Trial counsel was also ineffective for failing to obtain Mr. Windsor’s medical records and an expert evaluation of those records. In particular, counsel should have obtained the records relating to Mr. Windsor’s motorcycle accident in 1985, which involved probable head trauma and resulted in evident mental and psychological changes in Mr. Windsor.[4] This information, which was known to Mr. Windsor’s counsel, and other information that should have been developed by them (See Section II, infra), was more than sufficient to serve notice to any reasonably competent counsel that mental health defects likely played a role in the offense. Counsel’s complete failure to investigate Mr. Windsor’s mental history and condition was clearly ineffective.
(C.R. 185-89.)
The circuit court dismissed these allegations, finding that Windsor did not comply with the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. We agree. He did not specifically identify any experts counsel could have called and did not set forth specifically what their testimony would *814 have been. Also, with regard to Windsor’s fingerprints, during the trial, defense counsel cross-examined Curlee about the fact that she did not keep records about the number of points of similarity she found and about the fact that the print was only a partial print, thus emphasizing the weaknesses in Curlee’s identification. Windsor has not specifically alleged what more an expert could have done to challenge Curlee’s testimony about his fingerprints or how an expert could have challenged the fingerprint evidence that linked Guthrie to the killing of Howard. With regard to evidence regarding firearms, on cross-examination at trial, defense counsel emphasized the fact that the shotgun shells did not match the shotgun that had been recovered in relation to this case and emphasized that any testimony about gunshot residue on Howard’s hands and about the positioning of his hands was purely speculative. Finally, Windsor has not alleged facts that, if true, would establish that a pathologist and a medical expert or any of the other experts would have bene-fitted his defense. Thus, the record supports the circuit court’s findings, and we adopt them as part of this opinion. Because Windsor did not satisfy his burden of pleading that his trial attorneys rendered deficient performance in this regard and that that allegedly deficient performance prejudiced him, see Rules 32.3 and 32.6(b), Ala. R.Crim. P., and Strickland, summary dismissal was proper as to this allegation.
B.
Windsor also contends that his trial counsel did not object to prosecutorial misconduct during closing arguments. In relation to this claim, his entire argument in his amended petition consisted of the following:
“Trial counsel failed to adequately protect Mr. Windsor’s constitutional rights when the prosecution engaged in highly improper and prejudicial misconduct in its closing arguments, including the following:
“a. In his closing argument at the guilt phase, the prosecutor stated: We don’t have to give Harvey Windsor the benefit of the doubt’ (R 982), misstating the law on presumption of innocence and the state’s burden of proof beyond a reasonable doubt. Trial counsel did not object.
“b. It was conclusively proved at trial that the shotgun recovered from Mr. Windsor and Mr. Guthrie when they were arrested was not the gun that killed Mr. Howard, The state’s own expert witness testified that the shell casings found at Mr. Howard’s store and in the Mustang automobile were not from that gun (R 957). Nevertheless, in his closing argument, the prosecutor made reference to the shell casings and the shotgun recovered at the time of arrest, saying: ‘Maybe it is not the same gun, Mr. Harvey would have you to believe’ (R 994), with no objection from defense counsel. This statement was clearly intended to confuse the jury, leading them to believe the state had made an evidentiary link it could not make between the shell casings and the gun recovered at the time of arrest. Trial counsel did not object.
“c. In his closing argument, the prosecutor said: ‘if he [Mr. Windsor] is not guilty of capital murder, he ain’t guilty of nothing[1] (R 996-97). This was an outrageous misstatement of the law and of the range of choices available to the jury, which could have found Mr. Windsor guilty of a number of lesser included charges. The prosecutor’s argument was clearly meant to suggest to the jury that they had only two choices: capital murder or acquittal. This was *815 misconduct on the prosecutor’s part, see Beck v. Alabama, 447 U.S. 625 (1980). Trial counsel did not object.
“d. Throughout the trial, the state introduced evidence about the death of Randal Pepper in Colbert County; evidence that had no direct bearing on the crime for which Mr. Windsor was being tried. In closing argument, the prosecutor, clearly appealing to the emotions of the jury, referred to testimony of Tommy Pepper as follows: ‘Tommy Pepper said “an ocean of blood.” There was an ocean of blood all over the place’ (R 1029). The ‘ocean of blood’ reference, however, was to the death of Randal Pepper, not Mr. Howard. This was another example of the prosecutor inflaming the jury with misstatements of facts. Again, trial counsel did not object.”
(C.R. 192-94.)
In its order dismissing the petition, the circuit court found as follows:
“In Part I.D(a), pages 17-18 of Windsor’s amended Rule 32 petition, he claims his trial counsels were ineffective for not objecting during the prosecutor’s first guilt phase closing argument when, according to Windsor, the prosecutor misstated the law by arguing ‘We don’t have to give Harvey Windsor the benefit of the doubt.’ Windsor contends this argument misstated the law on the presumption of innocence and the State’s burden of proving his guilt beyond a reasonable doubt.
“... In Butler v. State, 659 So.2d 1021 (Ala.Crim.App.1995), the Alabama Court of Criminal Appeals reviewed the prosecutor’s closing statement in which he made the same comment that Windsor contends was improper. The Alabama Court of Appeals held that ‘viewing the prosecutor’s statement in the context of the entire trial, it cannot be said that this statement affected the fairness of the trial, especially in the light of the complete instructions as to the burden of proof given by the trial court to the jury.’ Like the judge at Butler’s trial, Judge Austin thoroughly explained the concept of reasonable doubt and the State’s burden of proof to the jurors in his guilt phase jury instructions. (R. 1041-1043) This Court finds that the prosecutor’s comment ‘did not have an unfair prejudicial impact on the jury or seriously affect [Windsor’s] rights.’ Guthrie v. State, 689 So.2d 935, 942 (Ala.Crim.App.1996). This allegation of ineffective assistance of counsel is without merit and is denied. Rule 32.7(d), Ala. R.Crim. P.
“... In Part I.D(b), page 18 of Windsor’s amended Rule 32 petition, he claims his defense counsels were ineffective for not objecting when, according to Windsor, the prosecutor improperly inferred there was a link between a shotgun shell recovered at the crime scene and another shotgun shell recovered from the car used during the crime to the shotgun recovered in the car Windsor was in when he was arrested.
“... This Court has reviewed the guilt phase closing arguments made by the prosecution and defense counsels. During Mr. Holladay’s guilt phase closing argument he specifically rebutted the prosecutor’s comment and vigorously argued that the shotgun recovered when Windsor was arrested had no connection to the crime for which Windsor was being tried. (R. 1001-1002) There is no reasonable probability that Holla-day’s decision to address the prosecutor’s comment about the shotgun shells and the shotgun in his own closing argument, as opposed to objecting to the prosecutor’s statement, caused Windsor to be prejudiced. See King v. State, 518 *816 So.2d 191, 196 (Ala.Crim.App.1987) (holding that ‘the rule [is] that decisions to object or not are customarily trial strategy questions’). Based on Holla-day’s closing argument, the Court finds the allegation of ineffective assistance in Part I.D(b) is without merit; therefore, it is denied. Rule 32.7(d), Ala. R.Crim. P.
“... In Part I.D(c), pages 18-19 of Windsor’s amended Rule 32 petition, he claims his trial counsels were ineffective for not objecting when the prosecutor argued ‘if [Windsor] is not guilty of capital murder, he ain’t guilty of nothing.’ According to Windsor, this comment misstated the law and the jury’s range of choices of lesser included offenses.
“... The argument quoted in Part I.D(c) was the prosecutor’s concluding comment in his first guilt phase closing. (R. 996-997) Just like a defense attorney can argue to the jury during closing his client should be acquitted or convicted of a lesser-included offense, the prosecution has the right to argue that the jury should convict the defendant of the offense charged in the indictment. See Henderson v. State, 584 So.2d 841, 857 (Ala.Crim.App.1988) (holding that ‘[t]he prosecutor has the right to argue his opinion from the record’) The Court finds the argument quoted in Part I.D(c) was not improper; thus, Windsor’s trial counsels were not ineffective for failing to object to it. See Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001) (holding that ‘[Bearden’s] counsel could not be ineffective for failing to raise a baseless objection’). The Court finds that the allegation of ineffective assistance in Part I.D(c) is without merit; therefore, it is denied. Rule 32.7(d), Ala. R.Crim. P.
“... In Part I.D(d), page 19 of Windsor’s amended Rule 32 petition, he claims his trial counsels were ineffective for not objecting during the prosecutor’s second guilt phase closing argument when the prosecutor commented on Tommy Pepper’s testimony. Pepper’s father was the victim in a robbery-murder in Colbert County, Alabama that occurred on the same day as the robbery-murder in St. Clair County which is the subject of these postconviction proceedings. According to Windsor, Pepper’s testimony had no bearing on his St. Clair County case and the prosecutor used Pepper’s testimony to inflame the jury.
“... Pepper’s testimony, that he saw Windsor running from his father’s store in Colbert County, was offered by the State in Windsor’s St. Clair County case to prove identity. On direct appeal, both the Alabama Court of Criminal Appeals and the Alabama Supreme Court held that admitting evidence of Windsor’s participation in the robbery-murder of Randall Pepper, including Tommy Pepper’s testimony, was not error. Windsor v. State, 683 So.2d 1027, 1035-1036 (Ala.Crim.App.1994); Ex parte Windsor, 683 So.2d 1042, 1052-1053 (Ala.1996). The portion of the prosecutor’s second guilt phase closing argument cited by Windsor occurred during the prosecutor’s review of the evidence concerning Windsor’s whereabouts on the day of the robbery-murder. (R. 1023-1032) The Court has reviewed the prosecutor’s comments on Tommy Pepper’s testimony and finds that, when taken in context, they were not improper. Because the prosecutor’s comments were not improper, they did not provide Windsor’s trial counsels any basis for an objection. See Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001) (holding that ‘[Bearden’s] counsel could not be ineffective for failing to raise a baseless objection’). This allegation of *817 ineffective assistance is without merit; therefore, it is denied. Rule 32.7(d), Ala. R.Crim. P.”
(C.R. 453-57.) The record supports the circuit court’s findings, and we adopt them as part of this opinion. Therefore, Windsor is not entitled to relief as to this ineffective-assistance allegation.[1]
II.
Windsor’s second argument is that his trial counsel rendered ineffective assistance during the penalty phase of his trial. In his amended petition, he alleged:
“... Trial counsel was grossly ineffective at the penalty phase of the trial, and the jury, after only 25 minutes of deliberation, returned a unanimous death recommendation, which was then followed by the trial judge when he sentenced Mr. Windsor to death. Despite significant information and facts known to trial counsel that would have supported a number of mitigating factors— both statutory and nonstatutory — trial counsel called only one witness, Lillian Windsor, Mr. Windsor’s mother. Ms. Windsor offered only sketchy evidence regarding Mr. Windsor’s family history. She did, however, give evidence regarding a motorcycle accident suffered by Mr. Windsor in 1985 and the aftermath of that accident; evidence that should have led Mr. Windsor’s trial counsel to conduct a thorough investigation of the accident and its effect on Mr. Windsor’s mental condition. The testimony of Ms. Windsor constituted the entirety of Mr. Windsor’s penalty phase evidentiary presentation. The jury subsequently returned a death recommendation, and the trial court sentenced Mr. Windsor to death. Trial counsel’s deficient performance prevented the jury and the trial court from hearing and considering, significant mitigating evidence, and thus denied Mr. Windsor a fair and accurate penalty phase determination as required under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama law. Quite simply, trial counsel completely abdicated its constitutionally mandated obligation to present a defense at the most important phase of Mr. Windsor’s capital trial.
“... It is absolutely essential that trial counsel in a capital ease fully investigate the history of the client in preparation for the penalty phase of a capital proceeding. It is constitutionally required that the trial court and jury consider ‘as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.’ Lockett v. Ohio, 438 U.S. 586, 604 (1978). This includes any evidence about the defendant’s history and life that may be considered by the jury or judge as a mitigating factor. Woodson v. North Carolina, 428 U.S. 280 (1976). Thus, Mr. Windsor was entitled to have all aspects of his background, family life, medical history, school records, and any other life-experience that may be considered mitigating evidence presented to the jury and judge at the penalty phase of his capital trial. Counsel for *818 Mr. Windsor fell far short of this constitutionally required mandate.
“... In order to have prepared properly for the penalty phase of Mr. Windsor’s capital trial, counsel should have obtained complete and accurate information relevant to Mr. Windsor’s medical history, educational history, employment and training history, family and social history, his correctional history, and any religious or cultural influences. American Bar Association, Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, 11.4.1(A)(2)(c) (adopted by the ABA house of delegates Feb. 7, 1989). Counsel in Mr. Windsor’s case completely failed these minimum requirements of an adequate investigation. ‘At the heart of effective representation is the independent duty to investigate and prepare [the client’s case.]’ Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir.1982). Counsel is under a clear duty to thoroughly investigate a client’s background in preparation for a capital penalty phase, and the failure to do so precludes a finding that the absence of a penalty phase was strategic. Baxter v. Thomas, 45 F.3d 1501 (11th Cir.1995) (counsel ineffective for failing to request state hospital records, school records, social service records, and failing to contact the defendant’s sister, neighbor, or social worker); see also Cave v. Singletary, 971 F.2d 1513 (11th Cir.1992) (complete failure to investigate and prepare for the penalty phase renders counsel’s assistance ineffective and requires a new penalty phase); Cunningham v. Zant, 928 F.2d 1006 (11th Cir.1991) (failure to put on evidence of disadvantaged background, fact that defendant’s father died when the defendant was six, and evidence of mild retardation deprived the defendant of the constitutionally mandated individual sentence determination); Thomas v. Kemp, 796 F.2d 1322 (11th Cir.1986) (ineffective assistance of counsel where little effort was made to investigate possible sources of mitigation evidence); Douglas v. Wainwright, 714 F.2d 1532, 1556 (11th Cir.1983) (‘permissible trial strategy can never include the failure to conduct a reasonably substantial instigation.’); Blanco v. Singletary, 943 F.2d 1477 (11th Cir.1991) (counsel did not attempt to contact family members or prepare for the penalty phase until the trial was underway, and failed to put on any mental health mitigating evidence); Jackson v. Herring, 42 F.3d 1350 (11th Cir.1995) (failure of counsel to investigate family history and background of client is inexplicable, cannot be considered strategic, and requires reversal); Blake v. Kemp, 758 F.2d 523 (11th Cir.1985) (presumption of prejudice where trial counsel made no effort to prepare for the penalty phase of a capital trial). In this instance, effective preparation and investigation by defense counsel would have revealed a number of mitigating factors, which should have been presented at Mr. Windsor’s penalty phase. This failure constitutes clear ineffectiveness, cannot be characterized as strategic, and requires that this Court now reverse Mr. Windsor’s death sentence.
“... The failure of defense counsel to prepare for Mr. Windsor’s penalty phase determination was complete. Counsel did not meet with anyone in preparing for the trial of Mr. Windsor’s life. Counsel did not interview friends, did not meet with other family members and did not meet with teachers or social workers. No effort was made to contact Mr. Windsor’s siblings or other relatives. This failure is simply inexplicable and inexcusable.
“... Perhaps the most egregious example of trial counsel’s ineffectiveness in the penalty phase of Mr. Windsor’s trial *819 was counsel’s failure to investigate Mr. Windsor’s mental history and condition, particularly with regard to the effect of a motorcycle accident in 1985. To the extent she was permitted to do so, Mr. Windsor’s mother gave vivid testimony about Mr. Windsor’s changed mental and psychological condition after the accident, including the fact that he was hospitalized for several months, underwent psychiatric evaluations and that ‘he was not the man I knew’ (R 1086). This information, of which trial counsel was aware, mandated that counsel thoroughly investigate the accident and its aftermath, obtaining records, interviewing doctors and so forth. Trial counsel, however, did no such investigation.
“... Mr. Windsor’s mental condition had a direct bearing on two statutory mitigating circumstances: that the offense was committed while Mr. Windsor was under the influence of extreme mental or emotional disturbance; and that Mr. Windsor lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, Ala.Code § 1SA-5-— Indeed, the trial court, considering, but not finding, these statutory mitigating circumstances referred in its sentencing decision to the accident and Mr. Windsor’s testimony, stating: ‘... there does seem to be some evidence of the defendant’s lack of mental capacity due to an accident that the defendant suffered some years back’ (R 1140). Incredibly, however, trial counsel did not obtain Mr. Windsor’s medical records from the time of the accident and his subsequent hospitalization of several months duration; did not contact or interview any of the doctors or other medical personnel involved in Mr. Windsor’s treatment, and did not engage a mental health expert to examine Mr. Windsor.
“... The record includes other significant information regarding Mr. Windsor’s mental history that trial counsel would have known had they undertaken even a modicum of investigation. For example, the pre-sentencing report prepared by the Board of Pardons and Paroles includes facts relevant to Mr. Windsor’s mental history; facts that should have been discovered by trial counsel. Specifically, the report notes that Mr. Windsor was ‘kicked out of school for fighting and an arrogant attitude’ (Supp. Report dated 9/29/92, 10), and that Mr. Windsor’s brother, M.A. Windsor, Jr. was on disability ‘due to seizures’ (Supp Report, 11). If trial counsel had bothered to obtain Mr. Windsor’s educational records and family history, particularly the family medical history, they would have learned these facts; facts which should have led to information supporting the mental capacity mitigating circumstances.
“... In addition to failing to build a case in support of the two mental capacity statutory mitigating circumstances, trial counsel’s gross ineffectiveness in regard to Mr. Windsor’s mental history and condition defeated any opportunity to present facts supporting nonstatutory mitigation, i.e., ‘any aspect of defendant’s character or record ... that the defendant proffers is a basis for a sentence less than death.’ Lockett v. Ohio, supra. Mr. Windsor’s mother’s testimony gave the jury and the trial court a glimpse of Mr. Windsor’s troubled mental history from the time of the accident; trial counsel’s duty was to build on that testimony and offer the jury cogent and persuasive reasons to mitigate Mr. Windsor’s sentence. They failed to do so. In Stephens v. Kemp, 846 F.2d 642 (11th Cir.1988), cert. denied, 488 U.S. 872 (1988), on facts strikingly similar to *820 those in the instant case, the Court of Appeals found that trial counsel’s failure to investigate, present and argue to the jury at the sentencing phase any evidence of the defendant’s mental history and condition constituted ineffective assistance under Strickland, supra. In Stephens, as in Mr. Windsor’s case, the only testimony presented at sentencing concerning the defendant’s mental history was from his mother, who testified to bizarre behavior by her son, quite similar to that described by Ms. Windsor regarding Mr. Windsor. See 846 F.2d, at 653-654 and fn. 6. The Court noted that:
“ ‘As her testimony makes clear, many others could have testified concerning his behavior; the fact that others did not do so undoubtedly diminished the impact on the jury of the facts she described. We note additionally that trial counsel’s closing argument in the penalty phase included no mention of the comments made by appellant’s mother concerning his behavior and mental condition .... As a result ... although the jury heard some testimony concerning appellant’s mental condition, the jurors were left with no guidance concerning how they might take such facts into consideration in mitigation of punishment .... We are convinced that there is a reasonable probability that, but for counsel’s omissions, the results of the sentencing proceeding would have been different. Strickland v. Washington, 104 S.Ct. at 2068.’
“846 F.2d at 655. This was precisely what happened at Mr. Windsor’s sentencing hearing. As in Stephens, Mr. Windsor’s counsel failed to build on Ms. Windsor’s testimony by investigating, presenting and arguing to the jury, facts about Mr. Windsor’s mental history and condition. And, as in Stephens, this failure constituted ineffective assistance.
“... If counsel had obtained these records and undertaken the sort of investigation of Mr. Windsor’s background they were constitutionally mandated to undertake, counsel could have established that Mr. Windsor’s mental, emotional and psychological condition changed radically after the accident in 1985, and that such changes were the result of the accident and affected Mr. Windsor’s behavior to a degree that would support both statutory and non-statutory mitigation.
“... Had counsel contacted other people who had interacted with Mr. Windsor, they would have presented a complete portrait of Mr. Windsor, which would have lessened his culpability for the crime, revealed numerous mitigating circumstances, and led the jury to impose a sentence of life without possibility of parole.
“... In addition, counsel was ineffective for not obtaining the services of medical experts for the penalty phase of the trial. Medical experts could have explained the likely causes and consequences of Mr. Windsor’s mental and emotional problems; without such assistance, counsel was in no position to adequately understand or even recognize such evidence if it were encountered during the investigation for Mr. Windsor’s penalty phase.
“... As in the guilt phase, trial counsel was also ineffective at sentencing by failing to object to an improper and prejudicial statement made by the prosecutor in closing argument. The prosecutor told the jury: ‘You may disregard their mitigating circumstances’ (R 1100). This is an outrageous misstatement of the law; trial counsel did not object.
*821 “... Trial counsel’s opening and closing statements in the sentencing phase also constituted ineffective assistance. Ignoring the testimony of Mr. Windsor’s mother about his mental condition, and having introduced no other mitigating evidence, counsel resorted to arguments that the jury had already rejected; namely, that Mr. Windsor did not intend to kill Mr. Howard. (R 1076, 1105, 1106, 1107). By virtue of its guilty verdict, the jury had concluded that Mr. Windsor did have the requisite intent; continuing to argue the opposite could only have alienated the jury. See Wade v. Calderon, 29 F.3d 1312 (9th Cir.1994). Perhaps that is why the jury returned a verdict of death in only 25 minutes.
“... Each of the preceding failures of trial counsel denied Mr. Windsor his Sixth Amendment right to effective assistance of counsel and deprived him of a fair sentencing hearing. Taken together, these errors of counsel mandate that this Court grant Mr. Windsor a new sentencing hearing.”
(C.R. 196-207.)
In its order dismissing the petition, the circuit court found:
“In Part II, paragraphs 41-54 on pages 21-32 of Windsor’s amended Rule 32 petition, he alleges his defense counsel were ineffective during the penalty phase of his trial. The Court will address each allegation in turn.
‘TV.A. Allegation Windsor’s Trial Counsels Were Ineffective For Failing To Interview Individuals.
“... Windsor contends ‘[c]ounsel did not interview friends, did not meet with other family members and did not meet with teachers or social workers.’ (Amended petition on p. 25) Windsor also contends his defense counsels ‘did not contact or interview any of the doctors or other medical personnel involved in [his] treatment’ involving his 1985 motorcycle accident. (Amended petition at P- 27)
“... Windsor fails to identify in his amended Rule 32 petition a single witness his trial counsel could have interviewed that might have provided any beneficial information for the penalty phase. Windsor does not name any family members, friends, teachers, or any social worker that were available and- willing to testify on his behalf. Likewise, Windsor does not identify anyone that treated him after his 1985 motorcycle wreck that could have provided any testimony about his physical or mental condition that might have been mitigating. The Court finds that this allegation of ineffective assistance fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed. See Woods v. State, [957 So.2d 492 (Ala.Crim.App.2004) ] (holding Woods’ claim his trial counsels were ineffective for failing to question his family members did not meet the pleading requirements of Rule 32.6(b) because ‘Woods fail[ed] to identify any family member by name, proffer what their testimony would have been at trial, or argue why such testimony would have caused a different result at the penalty phase or at sentencing’).
“IV.B. Allegation Windsor’s Trial Counsels Were Ineffective For Failing To Investigate And Present Evidence Of Windsor’s Mental Health.
“... Windsor contends his trial counsels were ineffective for not investigating his mental history ‘particularly with regard to the effect of a motorcycle accident in 1985.’ (Amended petition on p. 26) In support of this allegation, Windsor refers to his mother’s penalty phase testimony about his accident. Windsor also contends his trial counsels were in *822 effective for not obtaining his medical records from the accident and for not interviewing the medical personnel that treated him. Relying on the pre-sen-tence investigation and report (PSI), Windsor also contends that the fact that he was thrown out of school in seventh grade and that his brother collected disability due to having seizures should have caused his trial counsel to further investigate his mental health.
“... The Court notes that Mr. Holla-day indicated to Judge Austin during a pretrial conference that he and Mr. Lowery had used the State funds provided by the trial court for a private investigator and a psychiatric exam to investigate possible mitigating evidence. (R. 28) The Court also has reviewed Mrs. Windsor’s penalty phase testimony and the PSI. (R. 1079-1096; S.C.R. 6-12) Mrs. Windsor testified that Windsor’s behavior changed after his 1985 accident. She believed that Windsor suffered a head trauma in the accident and attributed Windsor’s criminal behavior on the accident. Mrs. Windsor was of the opinion that his 1985 motorcycle accident caused his behavior to change and lead him to committing criminal acts.
“... What Windsor appears to ignore is that his mother also said that the people treating him did not believe he had received a head injury. (R. 1088) Further, the PSI proves that Windsor had an extensive history of criminal activity long before his 1985 motorcycle accident. (S.C.R. 9-10) The Court also notes that the probation officer that prepared the PSI found Windsor ‘to be of average intelligence’ and indicated ‘[n]o mental or emotional abnormalities were noted during a very short interview.’ (S.C.R. 11) The probation officer also reported that Windsor admitted during his postconviction interview that ‘when [Windsor] previously served a sentence in the Alabama State Penitentiary that he acted “like crazy” and this got him some attention.’ Id.
“... Windsor and his collateral counsel apparently want this Court to find that trial counsels’ failure to present more or different mitigating evidence at the penalty phase is an indication of a lack of investigation for mitigation evidence. Based on this Court’s review of this case, however, it appears that Holla-day and Lowery did not present more mitigating evidence because it was not available. To state the obvious, no matter how extensive an investigation is, a defense attorney cannot present mitigating evidence that does not exist. The PSI indicates that Windsor’s criminal behavior began long before his motorcycle accident in 1985. Windsor had been found delinquent as a juvenile and had three felony convictions as an adult before his 1985 accident. The PSI also establishes that while he was in prison, Windsor intentionally ‘acted crazy’ in order to get attention.
“... Based on this Court’s review of the relevant parts of the record, and Windsor’s failure to plead specific facts in his amended petition, the Court finds that this allegation of ineffective assistance fails to meet the specificity and full factual pleading requirements of Rule 82.6(b); therefore, it is summarily dismissed. See Bracknell v. State, 883 So.2d 724, 728 (Ala.Crim.App.2003) (affirming the circuit court’s summary dismissal of Bracknell’s Rule 32 petition, holding that ‘[ajlthough Bracknell specifically identified the acts or omissions on the part of his trial counsel that he believed constituted deficient performance, he failed to include in his petition any facts tending to indicate how those acts or omissions prejudiced his de *823 fense’); see also Sunday v. State, 857 So.2d 166, 169 (Ala.Crima.App.2002) (holding that ‘[t]hough Sunday presented lengthy arguments in support of his [postconviction] claims, his pleadings failed to establish that counsel’s performance was deficient’).
“IV.C. Allegations Windsor’s Defense Counsels Were Ineffective During Their Penalty Phase Opening Statements And Closing Arguments.
“... The final allegations in Part II of Windsor’s amended Rule 82 petition are that his trial counsel’s opening statements and closing arguments at the penalty phase constituted ineffective assistance. The Court will address each allegation in turn.
“IY.C.(l). Ineffective assistance during penalty phase opening statements.
“... The only reference to his trial counsels’ penalty phase opening statement in Part II of Windsor’s amended Rule 32 petition is in paragraph 53. (Amended petition on pp. 31-32) Windsor fails to proffer in paragraph 53 one example of how his defense counsels’ penalty phase opening statement was deficient or one argument as to how it caused him to be prejudiced. The Court finds this allegation of ineffective assistance fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed.
“IY.C.(2). Ineffective assistance during penalty phase closing arguments.
“... Windsor claims his trial counsels were ineffective for arguing during their penalty phase closing that he lacked the intent to kill the victim and for not making arguments about his mother’s testimony concerning her opinion about the changes in his behavior after his 1985 motorcycle accident.
“... Penalty phase closing arguments are a defense attorney’s last opportunity to directly address the members of the jury in a capital murder trial. A defense attorney’s choice of what to emphasize during penalty phase closing arguments is a prime example of a strategic decision. In Devier v. Zant, 3 F.3d 1445, 1454 (11th Cir.1993), the Eleventh Circuit Court of Appeals held that:
“ ‘The fact that defense counsel chose to place primary emphasis on eliciting sympathy from the jury for his client, rather than thoroughly dissecting the evidence presented in the penalty phase is a uniquely tactical decision that a reviewing court must treat with deference. In formulating what to argue during a penalty phase closing, a defense attorney must be cognizable of many factors, including the nature of the particular offense and the evidence presented by the State during the entire trial. A defense attorney must also take into account the State’s first penalty phase closing argument and must keep in mind that the State will have the opportunity to rebut any closing arguments they will make. It is entirely reasonable for a defense attorney to decide to forego making certain closing arguments if they believe it could lead to the State making a possible prejudicial rebuttal argument in their second penalty phase closing. See Floyd v. State, 571 So.2d 1221 (Ala.Crim.App.1989), rev’d on other grounds, Ex parte Floyd, 571 So.2d 1234 (Ala.1990) (holding Floyd’s defense counsel were not ineffective when they made the strategic decision to waive closing arguments in order to deprive the prosecution of its main opportunity to argue to the jury).’
*824 “... On direct appeal, the Alabama Court of Criminal Appeals specifically held that ‘[v]iewing the evidence in the light most favorable to the [S]tate, there was sufficient evidence from which the jury could find that [Windsor] murdered and robbed Rayford Howard.’ Windsor v. State, 683 So.2d 1027, 1036 (Ala.Crim.App.1994). While the evidence presented at trial was sufficient to convict Windsor of capital murder, Windsor’s exact actions during the robbery-murder of Howard were less clear. In Tarver v. Hopper, 169 F.3d 710, 715 n. 7 (11th Cir.1999), the Eleventh Circuit reviewed Tarver’s claim his trial counsel were ineffective for arguing lingering doubt in the penalty phase of his 1985 capital murder trial and observed that:
“ ‘At the time of Tarver’s trial, how a sentencing jury might consider residual doubt about the defendant’s guilt had not been directly addressed by Alabama Courts. At any rate, Tar-ver’s lawyer was not unreasonable to believe that the use of evidence and argument linked to lingering doubt was sound strategy.’
“The Tarver Court also held that ‘[cheating lingering doubt has been recognized as an effective strategy for avoiding the death penalty.’ Id. at 715; see also Parker v. Dept, of Corrections, 331 F.3d 764, 787-788 (11th Cir.2003), Chandler v. United States, 218 F.3d 1305, 1320 (11th Cir.2000) (holding defense counsel’s focus on lingering doubt at sentencing was reasonable).
“... Windsor’s trial counsels tried to convince the jury to find as a mitigating circumstance that, although Windsor was an accomplice in the robbery-murder of Rayford Howard, his actual participation was relatively minor. Ala. Code § 13A-5-5K4) (1975). Given the particular facts of this case, the Court finds that the penalty phase closing arguments by Windsor’s trial counsel did not fall outside the wide range of effective assistance. See Ex parte Duren, 590 So.2d 369, 373 (Ala.1991) (holding that trial counsel’s reliance on a legally invalid defense ‘was not unreasonable under all the attendance circumstances’); see also McGahee v. State, 885 So.2d 191, 209 (Ala.Crim.App.2003) (holding that trial counsel’s decision to present an intervening-cause-of-death defense, which McGahee claimed was legally unsupported, ‘was a reasonable strategy under the circumstances’). This allegation of ineffective assistance is without merit; therefore, it is denied Rule 32.7(d), Ala. R.Crim. P.”
(C.R. 458-65.) The record supports the circuit court’s findings, and we adopt them as part of this opinion. We are well aware of the United States Supreme Court’s decisions in Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), and Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), regarding mitigation investigations by capital defense counsel. However, Windsor did not make sufficient allegations to satisfy his burden of pleading that his trial attorneys rendered deficient performance in this regard and that that allegedly deficient performance prejudiced him. See Rules 32.3 and 32.6(b), Ala. R.Crim. P., and Strickland. Rather, he simply made bare allegations that were not sufficient to warrant further proceedings as to this allegation. Accordingly, summary dismissal was proper as to this allegation.[2]
*825 III.
Windsor’s third argument is that the State did not comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Rule 16, Ala. R.Crim. P. Specifically, he contends that the State did not deliver to the defense “the photo array which was shown to State witnesses Sammie Sue Osborne and Tommy Pepper for the purpose of identifying Mr. Windsor.” (C.R. 208.) He also contends that, “despite a court order and admonitions from the trial court, the state failed to deliver the fingerprint evidence against Mr. Windsor and Mr. Guthrie in time for the defense to respond effectively to it.” (C.R. 209.)
Windsor did not allege that his Brady claims were based on newly discovered evidence or that any alleged suppression by the State continued until such time as the claims could not have been raised at trial. See Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003); Williams v. State, 782 So.2d 811 (Ala.Crim.App.2000). Therefore, the circuit court correctly concluded that his claims were precluded pursuant to the provisions of Rule 32.2(a), Ala. R.Crim. P. Specifically, with regard to the photo array, the circuit court properly found that Windsor’s claim was precluded because he raised it at trial and could have raised it on direct appeal, but did not. See Rule 32.2(a)(2) and (5), Ala. R.Crim. P. Also, with regard to the fingerprint evidence, the circuit court properly found that Windsor’s claim was precluded because it was raised and addressed at trial and on direct appeal. See Rule 32.2(a)(2) and (4), Ala. R.Crim. P.; Windsor, 683 So.2d at 1033-34.
IV.
Windsor’s fourth argument is that the prosecution relied on constitutionally unreliable evidence during his trial. Specifically, he contends that the State improperly used Tommy Pepper’s testimony about what he witnessed in Colbert County, including testimony that he saw Windsor running from the store, to establish that he acted with the requisite intent for capital murder with regard to the killing of Howard in St. Clair County. The circuit court properly found that this claim was precluded because several arguments about Pepper’s testimony were raised and addressed at trial and on direct appeal. See Rule 32.2(a)(2) and (4), Ala. R.Crim. P. To the extent Windsor may raise additional arguments about Pepper’s testimony, those arguments are precluded because he could have raised them at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
V.
Windsor’s fifth argument is that a pretrial meeting was conducted outside of his presence and was not recorded. The circuit court properly found that this claim was precluded because he could have raised it at' trial and on direct appeal, but *826 did not. See Rule 32.2(a)(3) and (5), Ala. R.Crim. P.[3]
VI.
Windsor’s sixth argument is that the indictment against him was invalid due to systematic underrepresentation of cognizable groups in the composition of the grand jury. The circuit court properly found that this claim was precluded because he could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
To the extent Windsor argued that his trial counsel rendered ineffective assistance by not raising this argument at trial, the circuit court found that he did not comply with the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. We agree. Although he made bare allegations about counsel’s performance, he did not satisfy his burden of pleading that his trial attorneys rendered deficient performance in this regard and that that allegedly deficient performance prejudiced him. See Rules 32.3 and 32.6(b), Ala. R.Crim. P., and Strickland. Accordingly, summary dismissal was proper as to this allegation.
VII.
Windsor’s seventh argument is that the indictment against him was invalid due to discrimination in the selection of the grand jury foreperson. The circuit court correctly found that this claim was precluded because he could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
Because Windsor did not sufficiently plead his claims or because his claims were precluded or without merit, the circuit court properly summarily dismissed his petition. See Rule 32.7(d), Ala. R.Crim. P. Accordingly, we affirm the circuit court’s judgment.
AFFIRMED.
WELCH and MAIN, JJ., concur.
WINDOM and KELLUM, JJ., concur in the result.
Note from the reporter of decisions: On July 16, 2010, the Alabama Supreme Court issued the following order:
“IT IS ORDERED that the petition for writ of certiorari to the Court of Criminal Appeals is granted in part and denied in part.
“The petition is granted only as to Ground IV. The petition is denied on all other grounds.
“IT IS FURTHER ORDERED that the Rules of Appellate Procedure are suspended, and that the cause is remanded to the Alabama Court of Criminal Appeals to address the claim of the petitioner in Ground IV....”

On Remand from the Alabama Supreme Court

PER CURIAM.
Harvey L. Windsor appealed the circuit court’s summary dismissal of his petition for postconviction relief filed under Rule 32, Ala. R.Crim. P. Windsor’s petition challenged his conviction for capital murder and his resulting sentence of death. This Court affirmed the circuit court’s judgment. Windsor v. State, 89 So.3d 805 (Ala.Crim.App.2009). Windsor petitioned the Alabama Supreme Court for certiorari review. On July 16, 2010, the Alabama *827 Supreme Court issued an order denying Windsor’s petition on all grounds except Ground IV. Ground IV, as stated in Windsor’s petition, is as follows:
“IV. THIS COURT SHOULD GRANT CERTIORARI PURSUANT TO RULE 39(a)(l)(C)[, ALA. R. APP. P„] TO EXPLAIN THAT THE COURT OF CRIMINAL APPEALS IS OBLIGATED TO ADDRESS EACH CLAIM AND ALLEGATION RAISED IN AN APPELLANT’S BRIEFS.
“In his appellate brief to the Aabama Court of Criminal Appeals, Mr. Windsor reasserted that counsel were ineffective at the penalty phase of his capital trial for failing to object to the prosecutor’s statement: “You may disregard their mitigating circumstances.’ (App. Brief, at 54; PC. 206.) As Mr. Windsor explained, this is an improper statement of the law. Despite presenting this allegation, the Court of Criminal Appeals failed to address it and Mr. Windsor explained as much in his application for rehearing and supporting brief submitted to that court. This Court should now grant certiorari pursuant to Rule 39(a)(1)(C) to explain that the Court of Criminal Appeals is required to address each claim and allegation presented in an appellant’s brief.”
(Windsor’s petition, p. 23.)
In its order granting Windsor’s petition as to Ground IV, the Aabama Supreme Court stated:
“IT IS FURTHER ORDERED that the Rules of Appellate Procedure are suspended, and that this cause is remanded to the Aabama Court of Criminal Appeals to address the claim of the petitioner in Ground IV, petition at p. 23. See Rule 54(b), Aabama Rules of Appellate Procedure.”[1]
In accordance with the Aabama Supreme Court’s instructions, we now address Windsor’s claim. Windsor’s entire argument regarding this claim in his initial brief to this Court consisted of the following paragraph:
“As in the guilt phase, trial counsel was also ineffective at sentencing by failing to object to an improper and prejudicial statement made by the prosecutor in closing argument. The prosecutor told the jury: You may disregard their mitigating circumstances’ (R1100). This is an outrageous misstatement of the law; trial counsel did not object.”
(Windsor’s brief, p. 54.) This paragraph also appears verbatim in Windsor’s amended Rule 32 petition as a part of his second claim (“Claim II”) in that petition.
Claim II in Windsor’s petition included several allegations of ineffective assistance of counsel during the penalty phase. The circuit court did not specifically address Windsor’s allegation, as quoted above, that his trial counsel was ineffective for not objecting to the prosecutor’s statement that “[y]ou may disregard their mitigating circumstances.”[2] The circuit court dis *828 missed Claim II, however, and cited Rule 32.6(b) and Rule 32.7(d), Ala. R.Crim. P., as the reasons for its dismissal.
Windsor’s challenge to this particular statement of the prosecutor is similar to his ineffective-assistance-of-counsel claim challenging his trial counsel’s failure to object to the prosecutor’s statement during the guilt phase that “[w]e don’t have to give Harvey Windsor the benefit of the doubt.” In our original consideration of Windsor’s appeal of the dismissal of his Rule 32 petition, we affirmed the circuit court’s rejection of Windsor’s claim that the prosecutor, by stating, “[w]e don’t have to give Harvey Windsor the benefit of the doubt,” had misstated the law on the presumption of innocence and the State’s burden of proving his guilt beyond a reasonable doubt. Specifically, we adopted the following portion of the circuit court’s order:
“ ‘In Butler v. State, 659 So.2d 1021 (Ala.Crim.App.1995), the Alabama Court of Criminal Appeals reviewed the prosecutor’s closing statement in which he made the same comment that Windsor contends was improper. The Alabama Court of Appeals held that “viewing the prosecutor’s statement in the context of the entire trial, it cannot be said that this statement affected the fairness of the trial, especially in the light of the complete instructions as to the burden of proof given by the trial court to the jury.” Like the judge at Butler’s trial, Judge Austin[, who presided over Windsor’s trial,] thoroughly explained the concept of reasonable doubt and the State’s burden of proof to the jurors in his guilt phase jury instructions. (R. 1041-1043) This Court finds that the prosecutor’s comment “did not have an unfair prejudicial impact on the jury or seriously affect [Windsor’s] rights.” Guthrie v. State, 689 So.2d 935, 942 (Ala.Crim.App.1996). This allegation of ineffective assistance of counsel is without merit and is denied. Rule 32.7(d), Ala. R.Crim. P.’”
Windsor, 89 So.3d at 815 (quoting the circuit court’s order).
Similarly, Windsor’s allegation regarding the prosecutor’s statement that “[y]ou may disregard their mitigating circumstances” is without merit.[3] The judge who presided at Windsor’s trial correctly instructed the jury on the mitigating circumstances and the jury’s responsibility to weigh those circumstances against the aggravating circumstances. See, e.cj., Burgess v. State, 827 So.2d 134, 162 (Ala.Crim.App.1998). Moreover, the prosecutor, in other statements immediately before and after the statement Windsor challenges, made it clear to the jury that it should weigh the mitigating circumstances against the aggravating circumstances. The statement Windsor challenges was made in the following context:
“[THE PROSECUTOR:] ... As I mentioned earlier and the Judge will tell you, the State in this phase of this trial, is required to prove to you twelve people the existence of at least one aggravating circumstance as set out in the Criminal Code of Alabama. We are required by law to prove to you beyond a reasonable doubt that an aggravating circumstance does exist in order for you to sentence him to death. The aggravating eircum- *829 stance as relied on by the State — nothing new to you and nothing you further need to hear evidence on. It is the aggravating circumstance of a murder committed during a robbery. You have already found that beyond a reasonable doubt. You found that when you found him guilty. The first hurdle the State has in getting a death penalty in this case has been surmounted. We must prove beyond a reasonable doubt the existence of one aggravating circumstance. That being murder during the commission of a robbery. You twelve people have unanimously decided that. The second thing and the last thing we must do is convince you twelve people that the aggravating circumstance that you have found outweighs any mitigating circumstance offered by the defendant. It outweighs it. It does not outnumber it. It outweighs it. That will be a call that each of you will be asked to make. The Court will tell you that at least ten of your number, in order to return a sentence of death, ten of you must find that our aggravating circumstance outweighs whatever mitigating circumstance they offer. Whatever they may argue to you, ten of your number must find it outweighs it. On your verdict form, you will be asked to return that number for a sentence of death, whether it be ten to two or eleven to one or twelve to zero. You do not have to give a reason ever. You do not have to set out what your findings are. You may disregard their mitigating circumstances. Ten of you have to agree. I expect all of you will agree that the aggravating circumstance outweighs any mitigating circumstance. What are the mitigating circumstances we are talking about here? Well, they are in the Code and they are whatever Mr. Holladay and Mr. Lowery wants to tell you about— whatever Mrs. Windsor wants to tell you about him not being a boy scout or them being poor — anything that a jury wants to consider because the defendant has that right to have you consider everything you possibly can about his life. You are not up here to guess what might have happened to Harvey Lee Windsor. This verdict is not based on supposition, just as the last one was not. You are not up here to think what might have been. You are here to decide what is right. That person over there is the person that you know that killed Ray-ford Howard — not what he might have done. Mr. Holladay or Mr. Lowery will tell you maybe he has no significant criminal history — sure he does. His mama admitted it. He has been sitting in prison for — she can’t even remember how long. They are going to tell you a mitigating circumstance — the crime was committed by another person and Harvey Lee Windsor was a relatively minor participant. They are going to tell you maybe he had the intent to rob, but certainly he didn’t have the intent to kill. You have found that. I don’t care what they tell you. I don’t care how many boy scout meetings he didn’t go to. I don’t care if he is from the poorest family in the world and never got to see a movie. I don’t care if his uncle didn’t take him to the ballgame. They can say anything they want to. The facts are what you know them to be. The right thing to do is sentence Harvey Lee Windsor to death. You can find all the mitigating circumstances you want to. You can go back to that jury room and spend four or five hours and dream up some of your own because that is your right as juror; but you will never convince yourself they outweigh the aggravating circumstance.”
(R. 1098-1101.) When placed in context, therefore, the statement that Windsor *830 challenges did not improperly urge the jury to disregard the trial court’s instructions. Accordingly, there is no merit to Windsor’s allegation that his counsel was ineffective for failing to object to the prosecutor’s statement that “[y]ou may disregard their mitigating circumstances,” and the circuit court properly dismissed that claim.
In our original opinion, we affirmed the circuit court’s judgment. For the reasons stated in that opinion and for the additional reasons noted in this opinion, we again affirm the circuit court’s judgment dismissing Windsor’s Rule 32 petition.
AFFIRMED.
WELCH, P.J., and WINDOM, KELLUM, BURKE, and JOINER, JJ„ concur.

" 4 Judge Austin, in his sentencing decision, stated that there was 'some evidence of defendant’s lack of mental capacity due to the accident' (R 1142). Trial counsel made no attempt to develop this evidence. (See Section II, 188, infra.)"

. Windsor raised additional ineffective-assistance allegations in his petition, but he made only fleeting references to those allegations in his brief to this court. On motion of the State, this court struck those references and gave Windsor an opportunity to amend his brief, but he did not do so. Therefore, we deem those allegations abandoned on appeal. See Brownlee v. State, 666 So.2d 91 (Ala.Crim.App.1995).

. We note that Windsor makes more specific allegations in his brief to this court. However, " ' "[t]his court is bound by the record and not by allegations or arguments in brief reciting matters not disclosed by the record.” Moore v. State, 457 So.2d 981, 989 (Ala.Cr. *825 App.1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985).’ Garnett v. State, 555 So.2d 1153 (Ala.Crim.App.1989).” Similton v. State, 672 So.2d 1363, 1366 (Ala.Crim.App.1995). However, he did not raise these specific allegations in his original or amended petition. Rather, he raised them for the first time in the "Petitioner’s Objection to the Court’s Adoption of the State’s Proposed Order Denying his Rule 32 Petition and Motion to Alter, Amend or Vacate Such Order” he filed after the circuit court had summarily dismissed his petition. Therefore, his specific arguments are not properly before this court. See Rule 32.7(b), Ala. R.Crim. P. (stating that "[ajmendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment”).

. Our review of the record from Windsor's direct appeal indicates that counsel filed a “Motion for Complete Record” pursuant to Rule 10(g), Ala. R.App. P., and that the circuit court granted that motion. However, the pretrial meeting about which he now complains was not referenced in that motion.

. Rule 54(b), Ala. R.App. P., states: "In each case in which the [Court of Criminal Appeals] affirms the judgment or order appealed from without writing an opinion, the court shall designate the case as a 'No Opinion’ case, but the court shall write a memorandum addressing the appellant’s contentions and giving a reason for rejecting them.” We note that there was an opinion issued in this case.

. In his initial brief to this Court, Windsor did not challenge the circuit court’s failure to specifically address his claim that his trial counsel was ineffective for not objecting to the prosecutor’s statement that "[y]ou may disregard their- mitigating circumstances.” Instead, Windsor waited until his rehearing application to attempt to challenge the circuit court’s failure to specifically address that particular claim. Therefore, this issue is not properly before us. See Water Works & Sewer *828 Bd. of City of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002) (“The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing.”). See also Boyd v. State, 913 So.2d 1113, 1122-23 (Ala.Crim.App.2003).

. We question whether the allegation is sufficiently pleaded, but even if it is, it is nonetheless without merit.